UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                           :
UNITED STATES OF AMERICA,                        :         18-cr-603 (ARR)
                                                           :
    -against-                                          :         <u>NOT FOR PRINT OR</u>
                                                           :         <u>ELECTRONIC</u>
MOHAMED TAHLIL MOHAMED and              :         <u>PUBLICATION</u>
ABDI YUSUF HASSAN,                            :
                                                           :         <u>OPINION & ORDER</u>
                  Defendants.                      :
                                                           :
------------------------------------------------------------------ X

ROSS, United States District Judge:

       Mohamed Tahlil Mohamed and Abdi Yusuf Hassan are charged with (1) conspiracy to provide material support for acts of terrorism, (2) provision and attempted provision of material support for acts of terrorism, (3) hostage-taking conspiracy, (4) hostage taking, (5) threatening a U.S. national with a weapon of mass destruction, (6) unlawful use of firearms, and (7) firearms conspiracy. Both defendants have moved to have witnesses located in Somalia testify at trial via live closed-circuit television ("CCTV"), or in the alternative, to take pretrial depositions pursuant to Rule 15 of the Federal Rules of Criminal Procedure. This is a close case, but I conclude that Rule 15 depositions may be appropriate because some of the anticipated testimony is material and the witnesses are unavailable. However, I reserve judgment pending a conference with the parties regarding the mechanics of conducting remote depositions by videoconference.

## BACKGROUND

       Mohamed and Hassan are charged as part of a conspiracy by a group of Somali pirates to hold John Doe hostage in Somalia over a two-year period. The defendants do not deny all involvement with the John Doe hostage situation. *See, e.g.*, Mohamed Tahlil Mohamed's Mem. of L. in Supp. of his Mot. for Trial Test. via Live Videoconference or Pretrial Deps. ("Mohamed Br.")

1

1, ECF No. 48-4; Mem. of L. in Supp. of Def. Abdi Yusuf Hassan's Mot. to Elicit Test. via CCTV or to Conduct R. 15 Deps. Prior to Trial ("Hassan Br.") 6, ECF No. 50. Instead, they offer two defenses: (1) they lacked the required mens rea for hostage-taking because they acted intending to aid Doe and secure his release; and (2) the defendants did not willfully participate in any conspiracy with the alleged co-conspirators because they were actually working against the pirates' goals. *See* Mohamed Br. 1; Hassan Br. 14–15.

All of the conduct charged in this case took place in Galkayo, Somalia. This circumstance has posed obvious logistical challenges for defendants' investigations, but each defendant has located witnesses whose testimony he seeks to introduce into evidence. *See* Hassan Br. 4–6. Mohamed's witnesses are (1) Said Osman Warsame, a non-governmental organization employee, (2) Dahir Osman Hirsi, an elder in Mohamed's subclan; and (3) Sharif Ali Harbi, a Galkayo police commander. Mohamed Br. 2–4. Hassan's witnesses are two Somali law enforcement officers, (1) Mohammad Nur Ali and (2) Colonel Ali Nur Sahal, as well as (3) Abdi Hassan Awale, the president of the Galmudug state in Somalia. Hassan Br. 6–8.

Because these witnesses are unable to travel to the United States to testify, defendants propose that they testify either by CCTV or by Rule 15 depositions. Hassan Br. 1; Mohamed Br. 1. They propose that this testimony be taken at the United States Embassy located in the "Green Zone" of Mogadishu, Somalia, or in the alternative, a United States Embassy in a neighboring country that the witnesses are permitted to enter. Hassan Br. 9. The government opposes defendants' motions. *See generally* Govt.'s Opp. to the Defs.' Mots. for R. 15 Deps. ("Govt. Br."), ECF No. 52.

## LEGAL STANDARDS

A.  **Rule 15 Depositions**

Rule 15 of the Federal Rules of Criminal Procedure provides: "A party may move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of exceptional circumstances and in the interest of justice." Fed R. Crim. P. 15(a)(1). The burden is on the moving party to establish "exceptional circumstances," by demonstrating three criteria: (1) materiality of the testimony, (2) unavailability of the witness; and (3) that the deposition is necessary to prevent a failure of justice. The burden is on the moving party to establish these three criteria. *United States v. Cohen*, 260 F.2d 68, 78 (2d Cir. 1962).

Testimony is material if it is "highly relevant to a central issue in the case[.]" *United States v. Vilar*, 568 F. Supp. 2d 429, 440 (S.D.N.Y. 2008). The testimony "must be exculpatory or go directly to negating an essential element of the government's case." *United States v. Ionia Mgmt. S.A.*, No. 03:07CR134 (JBA), 2007 WL 2325199, at *11 (D. Conn. Aug. 9, 2007), *objections overruled,* 499 F. Supp. 2d 166 (D. Conn. 2007). However, "[t]here is no requirement that the testimony being sought must surely acquit the defendant." *United States v. Little*, No. 12 Cr. 647(ALC), 2014 WL 1744824, at *1 (S.D.N.Y. Apr. 23, 2014).

The court may evaluate the materiality of proposed testimony by relying on counsel's representations. *See Vilar*, 568 F. Supp. 2d at 440. There is no requirement that the proffered testimony be presented in the form of an affidavit. *Id.*

Unavailability is judged by a "practical standard of whether under the circumstances the [movant] has made a good-faith effort to produce the person to testify at trial." *United States v. Johnpoll*, 739 F.2d 702, 709 (2d Cir. 1984). As the court explained in *United States v. Al Fawwaz*:

> Foreign witnesses who are not subject to the government's subpoena power and, despite the moving party's appropriate efforts, refuse to travel to this country to testify are routinely found unavailable. However, vague assertions that the witness may not be willing or able to travel at the time of the trial are insufficient to find unavailability.

No. S77 98 Crim. 1023 (LAK), 2014 WL 627083, at *1 (S.D.N.Y. Feb. 18, 2014).

The third criterion, that the testimony is necessary to prevent a failure of justice, is "likely satisfied when the first two factors are met." *United States v. Khan*, No. 06-CR-255 (DLI), 2008 WL 2323375, at *4 (E.D.N.Y. June 2, 2008). However, a court could find that material testimony of an unavailable witness is not necessary to prevent a failure of justice where there are "substantial countervailing factors militating against the taking of the deposition." *United States v. Grossman*, No. S2 03 CR. 1156 (SHS), 2005 WL 486735, at *3 (S.D.N.Y. Mar. 2, 2005) (citing *Johnpoll*, 739 F.2d at 709). Examples of countervailing factors may include concerns about the reliability of testimony not taken under penalty of perjury, *United States v. Drogoul*, 1 F.3d 1546, 1554–55 (11th Cir. 1993), or the safety of sending attorneys to depose the witness. *See United States v. Cruz*, 46 F.3d 1146 (9th Cir. 1995).

Admissibility of the deposition testimony is *not* a factor in deciding a Rule 15 motion. *See* Fed. R. Crim. P. 15(f) ("An order authorizing a deposition to be taken under this rule does not determine its admissibility. A party may use all or part of a deposition as provided by the Federal Rules of Evidence."); *see also United States v. Salim*, 855 F.2d 944, 952 (2d Cir. 1988) ("[T]he purpose and language of Rule 15 . . . concentrates first on preservation of testimony and *only thereafter* focuses on admissibility." (emphasis added)). A party may "make the relevant objections at the deposition and object to the admissibility of testimony at trial." *Little*, 2014 WL 3604417, at *2. However, "[t]he court need not, at the cost of time and money, engage in an act of futility by authorizing depositions that clearly will be inadmissible at trial." *Drogoul*, 1 F.3d at 1555; *see also United States v. Campbell*, No. 91 Cr. 1219 (RJD), 1998 WL 564379, at *1 (E.D.N.Y. June 30, 1998) ("[A] court does not abuse [its] discretion where it denies a Rule 15 motion because 'the evidence [is] in some respects irrelevant and in others cumulative and possibly inadmissible as hearsay.'" (quoting *United States v. Hernandez–Escarsega*, 886 F.2d 1560, 1569

–70 (9th Cir. 1989))).

The decision to permit a deposition under Rule 15 rests within the discretion of the trial court, and will not be disturbed absent clear abuse of discretion. *Johnpoll*, 739 F.2d at 708).

### B. CCTV Testimony

CCTV testimony is not "considered a commonplace substitute for in-court testimony by a witness." *United States v. Gigante*, 166 F.3d 75, 81 (2d Cir. 1999). However, "[u]pon a finding of exceptional circumstances . . . a trial court may allow a witness to testify via two-way closed-circuit television when this furthers the interest of justice." *Id.* The standard for exceptional circumstances is the same as the Rule 15 standard: the moving party must prove that the witness's testimony is material; the witness is unavailable; and allowing CCTV testimony furthers the interests of justice. *See United States v. Buck*, 271 F. Supp. 3d 619, 622–23 (S.D.N.Y. 2017) (quoting *United States v. Mostafa*, 14 F. Supp. 3d 515, 521 (S.D.N.Y. 2014)).

## DISCUSSION

The defendants seek to present testimony from witnesses located in Somalia to show that the they acted with a purpose to aid John Doe and secure his release, and that they did not willfully participate in a conspiracy to hold him hostage. *See* Mohamed Br. 2–4; Hassan Br. 6–8. For the reasons described below, I conclude that at least some of the anticipated testimony is material, and that the witnesses are unavailable. I do not yet rule on the motion because I need more information before deciding the third factor, whether depositions or CCTV testimony are necessary to prevent a miscarriage of justice.

### A. Materiality

Defendants propose witness testimony that would be highly relevant to two central issues in the case: (1) whether the defendants had the required mens rea for hostage taking and hostage

taking conspiracy; and (2) whether the defendants were willful participants in the charged conspiracies. *See* Mohamed Br. 2–4; Hassan Br. 6–8. The government argues that all of the proposed testimony is immaterial for various reasons which I do not find persuasive. *See* Govt. Br. 7–17. I do take the government's point that much of the testimony is likely to be inadmissible. *See id.* at 12–13, 17–18. However, I find that that based on the defense counsels' representations, there would be some material, admissible testimony for each witness, and thus conducting these depositions would not be futile.

1. *Mens Rea for Hostage Taking and Hostage Taking Conspiracy*

The hostage taking statute, 18 USC § 1203, requires that the government prove beyond a reasonable doubt that the defendant acted with the purpose to compel a third party or governmental organization to do or abstain from doing some act as an explicit or implicit condition for releasing the person detained. *See, e.g., United States v. Rodriguez*, 587 F.3d 573, 580 (2d Cir. 2009) (noting that hostage taking requires that a defendant act "with the purpose of compelling a third person or governmental organization to act in some way, or to refrain from acting in some way."). This is a fact that the jury must find for Count Four, Hostage Taking, as well as Count Three, Hostage Taking Conspiracy.

The jury must explicitly find that the defendants acted with this purpose. If they lacked such a purpose, they cannot be convicted on Counts Three or Four. Thus, testimony about the defendants' purpose for any involvement with the pirates who took Doe hostage is highly relevant to a central issue in the case, and, if believed, would be powerfully exculpatory as to the hostage taking charges.

2. *Willful Participation in a Conspiracy*

One of the elements of conspiracy is the defendant's knowing and willful participation in the conspiracy with the specific intent to commit the underlying offense. *See, e.g. United States v. Rodriguez*, 392 F.3d 539, 545 (2d Cir. 2004). Defendants are charged with three conspiracies: a Hostage Taking Conspiracy, Count Three, a Material Support for Acts of Terrorism Conspiracy, Count One, and a Firearms Conspiracy, Count Seven.

Testimony regarding defendants' hostile relationship with alleged co-conspirators is highly relevant to the question of whether he knowing and willfully joined a conspiracy with them. *See United States v. Khan*, No. 06-CR-255 (DLI), 2008 WL 2323375, at *1–2 (E.D.N.Y. June 2, 2008) (allowing depositions on the issue of hostile relationship between alleged co-conspirators). While "the existence of hostility between alleged co-conspirators does not necessarily vitiate the possibility of a conspiracy between them[,]" the jury may consider hostility in making its determination about whether the defendants willfully participated in the conspiracy. *Id.* at *2.

3. *The Government's Arguments*

The government raises several arguments in support of its claim that the defendants' witnesses' anticipated testimony is immaterial. These arguments fail to rebut the two reasons, described above, that the testimony is material.

First, the government argues that "Mohamed has not proffered any facts to suggest that he was 'attempting to help free [Doe],' but rather that the Mohamed Witnesses, and purportedly Mohamed himself, were 'worried that, among other things, the kidnappers would hand [Doe] over to the terrorist group al-Shabaab[.]'" Govt. Br. 8. (citing Mohamed Br. 6 and Marvinny Decl. ¶ 4.). Preliminarily, I note that even the quotation the government cites states that preventing a transfer to al-Shabaab was one of Mohamed's purposes, "*among other things*." *Id.* (emphasis

added). The government is mischaracterizing the defendant's position. The defendant repeatedly asserts that his purpose was to aid and assist John Doe. *See* Mohamed Br. at 1–4.

Second, the government argues that the proffered testimony does not support a defense of either duress or government authorization. Govt. Br. 9–10 (citing *United States v. Hernandez*, 894 F.3d 496, 503 (2d Cir. 2018) (discussing the requirements of a duress defense); *United States v. Georgescu*, 699 F. App'x 73, 74 (2d Cir. 2017) (discussing defenses of entrapment and negation of intent, in the context of a defendant believing a government official had authorized him to do something); *United States v. Giffen*, 473 F.3d 30, 43 (2d Cir. 2006) (similarly addressing a defense of governmental authorization)). But defendants have not suggested they would use the anticipated testimony to advance either of these affirmative defenses. Thus, the government's argument about these defenses is irrelevant.

Next, the government relies on *Georgescu* to argue that by infiltrating the piracy group holding Doe hostage, Mohamed necessarily adopted the pirates' purpose. *See* Govt. Br. 10–11 (citing 699 F. App'x at 76). The fact that the pirate group apparently acted with this purpose does not necessarily mean that Mohamad adopted this purpose. Indeed, Mohamed disputes that he aided the pirates in their undertaking to hold Doe hostage. *See* Mohamed Br. at 1–2. Under the hostage taking statute, the defendant's purpose is an element of the offense. 18 USC § 1203. if Mohamad was not acting with the purpose to compel a third party or governmental organization to do or abstain from doing some act as an explicit or implicit condition for releasing Doe, he cannot be found guilty of hostage taking.

The government also asserts that the testimony of Mohamed's witnesses is immaterial because it is cumulative of testimony that Mohamed could offer himself. *See* Govt Br. at 13. This argument ignores Mohamed's Fifth Amendment rights. Assuming that the witness testimony will

be cumulative of the Mohamed's testimony also assumes that Mohamed will testify. Mohamed has not committed to doing so, and has the right not to. Mohamed cannot be compelled to testify in his own defense. He has a right to present his defense through witness testimony.

Turning to the opposition to Hassan's motion, the government begins by citing a series of cases which stand for the proposition that innocent behavior on other occasions is not evidence of innocence of the charged offenses. *See* Govt. Br. at 14–15 (citing, among others, *United States v. Scarpa*, 913 F.2d 993, 1010–11 (2d Cir.1990); *United States v. Gambino*, 838 F. Supp. 744, 748 (S.D.N.Y. 1993) and *United States v. Nekritin*, 2011 WL 2462744, at *5 (E.D.N.Y. 2011)). This argument is apparently responding to proposed testimony that Hassan took public anti-piracy stances, and specific testimony by Mohammad Nur Ali that he often visited Hassan's home, and observed that "Hassan never associated or socialized with pirates, he did not permit pirates to live at this house, or permit his home to be used to facilitate the storage of weapons used by the pirates." Hassan Br. at 8. This testimony largely does not involve innocent behavior on other occasions. Much of the testimony involves witness's observations of Hassan's conduct during the two-year period in which Doe was held hostage—thus the *same occasion* as the charged offenses.

The government's final materiality argument is that Hassan is seeking to elicit improper character evidence. Govt. Br 15. Again, the proffered testimony is material because of its relevance to mens rea for hostage taking and willful participation in a conspiracy. It is not offered as character evidence.

The government also makes assertions that all of the anticipated testimony would be inadmissible. *See* Govt. Br. 12–13, 17–18. Because this is an argument about admissibility, not materiality, I address it separately, after my discussion of the material testimony each proposed

witness may be able to offer. I will highlight the most relevant points, focusing on statements likely to be admissible, but there may be additional exculpatory evidence in the anticipated testimony.

4. *Application to Mohamed's Witnesses*

Much of Said Osman Warsame's anticipated testimony is highly relevant as to the central issues of whether Mohamed had the mens rea for hostage taking and whether he willfully participated in a conspiracy with the pirates. He can testify that "he decided that the best way to ensure Moore's safety was to send someone to infiltrate the pirate group holding him hostage and remain by his side during his captivity" and that "[t]he subclan elders and Osman eventually chose Mohamed for this task because he was in the Somali military, was trustworthy, and would accept the subclan's directive to assist Moore." Mohamed Br. at 3. He can also testify to his presence at a January 2012 meeting with Mohamed to discuss this task, and that he provided Mohamed funds to travel to the group holding Doe. *Id.* at 3. Finally, he can testify that Mohamed sent him periodic reports about Moore's condition. *Id.*

Mohamed's next witness, Dahir Osman Hirsi can testify that he was also present at the January 2012 meeting and involved with selecting Mohamed to infiltrate the pirate group. *Id.* at 4. Similarly, Harbi can testify to his presence at the meeting where Mohamed was assigned this task. *Id.* at 5. The existence of a meeting where Mohamed was instructed to infiltrate the pirate group in order to assist Doe is probative of whether Mohamed had the required mens rea and whether he willfully joined a conspiracy.

5. *Application to Hassan's Witnesses*

Mohammad Nur Ali is expected to testify that Hassan was appointed as the Minister of the Interior and Security, and explain the nature of Hassan's duties in that role. Hassan Br. at 6. This tends to show that Hassan did not have the required mens rea and that he was at cross-purposes

with the alleged co-conspirators. Ali can additionally testify to his observations upon many visits to Hassan's home that pirates were not present and the home was not being used to facilitate Doe's captivity.[1] *Id.* at 8. This is highly relevant for another reason: it negates one of the government's assertions about Hassan's role in the conspiracy.

Ali Nur Sahal's material anticipated testimony includes that he traveled to Galkyo with an American contractor who was working to secure Doe's release, and that they met with Hassan. *Id.* at 8. Abdi Hassan Awale's material testimony includes that he appointed Hassan as Minster of the Interior and Security, what the duties of that position were, and that he received periodic updates from Hassan. *Id.* at 8–9.

Some aspects of the anticipated witness testimony for both defendants may be cumulative of testimony by defendants' other proposed witnesses. However, as a practical matter, if the parties establish a method of conducting these depositions, I see no reason why the defendants should not depose all of their witnesses to present the most thorough defense. *See Khan*, 2008 WL 2323375 at *3 ("In the court's view, it will not be an undue burden or expense on the parties to depose additional, albeit potentially cumulative witnesses on this issue, once already in Guyana.").

6. *Admissibility*

It appears to be likely that much of the witness' testimony will be inadmissible, as hearsay or otherwise lacking in foundation. Evidence obtained in a Rule 15 deposition may or may not be admissible, and this can be evaluated after the deposition is taken. *See* Fed. R. Crim. P. 15(f). If it

---

[1] There is some confusion on this point because defense counsel represents both that Ali visited Hassan's home "on several occasions, sometimes several times in one day[,]" Hassan Br. at 8, and that he visited Hassan's home "on an almost daily basis." *Id.* at 14. The frequency of Ali's visits will be important in determining the relevance of the testimony and whether there is a proper foundation.

appears that the entire exercise would be futile because it would not produce any admissible evidence, a judge might use her discretion deny a Rule 15 motion. See *United States v. Drogoul*, 1 F.3d 1546, 1555 (11th Cir. 1993). But that is not the case here. While much of the testimony may be hearsay, each witness will probably be able to offer some admissible evidence. I will examine the depositions prior to trial and exclude any inadmissible statements. However, I will also use this opinion to provide guidance in conducting depositions by addressing examples of proposed testimony which appear, on their face, to be inadmissible.

Looking first at Mohamed's proffer, I cannot discern any admissible foundation for Warsame's testimony that the pirates came to suspect Mohamed and demanded that he leave the group. *See* Mohamed Br. at 4. Similarly, Hirsi's testimony that Mohamed told him that he was not trusted by the pirates and that they were monitoring him would be inadmissible hearsay. *Id.*

Turning to Hassan's proffer, I do not see sufficient foundation for Ali's testimony that Hassan was "fervently committed" to anti-piracy efforts. Hassan Br. 6–7. I see no foundation for assertions that the pirates did not trust Hassan and thought he was a spy. *Id.* at 7. Much of Ali's testimony appears to be pure hearsay, such as Hassan's public statements, statements by pirates, a report of a planned assassination attempt, and Hassan's statements in conversations with Ali. *Id.* Sahal proposes to testify that Hassan did not negotiate on behalf of the pirates and that Hassan was not a member of the pirate conspiracy based on Sahal's "observations and interactions" with him. *Id.* at 8. The proffer provides no detail as to these "observations and interactions," and thus, does not provide a sufficient foundation to allow that testimony to be admitted. *Id.* The proffer of Awale's testimony states, without any foundation, that Hassan was "committed to" securing Doe's release. *Id.* at 9.

If the parties proceed with these depositions, the defendants must establish proper foundation for witness statements in order to produce any evidence that will actually be admissible at trial. The key admissibility issues will be hearsay and the absence of sufficient foundation.[2] The witnesses must attest to direct observations, non-hearsay statements, or statements subject to a hearsay exception.

The defendants argue that some statements will be admissible because they are offered not for their truth, but instead to show the defendants' state of mind. *See* Defs.' Reply in Supp. of R. 15 Mots. ("Reply") 12, 15. I am skeptical that this exception will apply in most cases. For example, Hassan argues that his statements offering assistance in securing Doe's release show his state of mind. *Id.* at 12. But those statements' relevance to Hassan's state of mind hinges on the truth of the statements. Thus, they are actually being offered for the truth of the matter asserted.

B. <u>Unavailability</u>

There is no real question of whether the witnesses are unavailable. Defendants have made sufficient good faith efforts to secure the presence of the witnesses at trial under circumstances where there is no way to subpoena the witnesses, there is a travel ban forbidding almost all travel by Somalis to the United States, the United States is apparently not processing Somali visas, and the United States is unwilling to otherwise secure the witnesses safe passage to the United States. *See* Hassan Br. at 15–16; Govt. Br. at 19. We are also in the midst of a global pandemic which puts further health and safety restraints on travel. All six proposed witnesses are unavailable for the purposes of Rule 15 or CCTV testimony.

---

[2] The government argues that there is an additional admissibility problem because the defendants are seeking to elicit lay opinions. *See* Govt. Br. at 17–18. But this is really more a question of establishing the proper foundation. Witnesses may be able to attest to their conclusions if they are supported by direct observations or admissible statements.

13

### C. <u>Preventing a Miscarriage of Justice</u>

The remaining factor, on which I reserve judgment, is whether conducting the deposition is necessary to prevent a miscarriage of justice. The defendants are facing potential life sentences. They should be offered the opportunity to present any and all exculpatory, admissible evidence that they are able to obtain.

The defendants have only proffered enough about the anticipated testimony to overcome the materiality question by a slim margin. While typically meeting the first two criteria is enough to establish that the deposition is necessary to prevent a failure of justice, *Khan*, 2008 WL 2323375 at *4, this is a close case. Thus, I will also take into account countervailing factors, and need more information about those factors before I can render a decision.

The government raises, as a countervailing factor, that the witnesses would not be sworn to an oath "before this Court, with all of the incentives for truthful testimony that such an oath provides." Govt. Br. at 18. The government further explains that "[a]s a practical matter, a perjury sanction would be nearly impossible to enforce." *Id.* (citing *United States v. Buck*, 271 F. Supp. 3d 619, 624 (S.D.N.Y. 2017) and *United States v. Banki*, No. 10 Cr. 08 (JFK), 2010 WL 1063453, at *2 (S.D.N.Y. Mar. 23, 2010)). But the depositions can be taken at the United States Embassy, where consular officers can administer oaths to the witnesses. *See* Reply at 16–17. Defendants correctly point out that *Banki* suggests that taking sworn testimony at a United States Embassy would mitigate the reliability problem posed when witnesses do not swear an oath before the court. *Id.* (citing 2010 WL 1064353, at *3) (denying a motion to take depositions in Iran because "there is no United States Embassy or Consulate in Iran, and no realistic way for officers of the United States to travel there to administer the oath or otherwise monitor the proceedings."). I am satisfied that conducting the depositions at the embassy would provide sufficient reliability safeguards.

However, I have serious concerns about sending American attorneys to Somalia, both because of dangers to Americans in the region, and the risks of travel during the coronavirus pandemic. But this does not necessarily rule out the possibility of taking testimony from witnesses located in Somalia. It seems that the government should be able to facilitate remote depositions that do not require any attorneys to travel to Somalia. If it is technologically feasible, the parties should conduct recorded Rule 15 depositions over videoconference with witnesses at the United States Embassy in Mogadishu. I choose this solution rather than CCTV testimony both because of the challenges of coordinating live testimony, and because I anticipate needing to make numerous rulings about the admissibility of witness testimony.

The government is instructed to investigate the feasibility of coordinating videoconference depositions with the United States Embassy in Mogadishu. While the government states it has made "good faith efforts to determine whether it would be logistically possible to conduct depositions of the proposed witnesses[,]" the government does not address why the solution I propose here is not feasible. Govt. Br. at 19–21. The government is to make rigorous efforts to facilitate this process, or come up with alternative mechanics by which to conduct these depositions. The defendants may also research alternative solutions. I would consider denying the motion only if it is not possible to conduct these depositions remotely or through other means which do not compromise health and safety.

## CONCLUSION

Because the defendants have demonstrated that there is material testimony which can be given by unavailable witnesses, I am inclined to grant defendants' Rule 15 motions if they can be safely accomplished. However, before ruling on the motions, I will hold a phone conference at a mutually convenient time during the week commencing with April 6, 2020 to discuss the

mechanics of conducting the depositions. The parties are instructed to inform the court by letter on or before Monday, April 6, 2020 of a date and time next week when they would be prepared to discuss this issue.

SO ORDERED.

                                               /s/
                                               Allyne R. Ross
                                               United States District Judge

Dated:         April 1, 2020
                Brooklyn, New York