UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------

UNITED STATES                                    18-CR-00603 (ARR)

-against-                                        OPINION AND ORDER

MOHAMED TAHLIL MOHAMED and

ABDI YUSUF YASSAN

Defendants.
--------------------------------------------------------------

ROSS, United States District Judge:

Defendants Mohamed Tahlil Mohamed and Abdi Yusuf Hassan are charged on seven counts: (1) conspiracy to provide material support for acts of terrorism, (2) provision and attempted provision of material support for acts of terrorism, (3) hostage-taking conspiracy, (4) hostage taking, (5) threatening a U.S. national with a weapon of mass destruction, (6) unlawful use of firearms, and (7) firearms conspiracy. The parties submitted proposed jury instructions, noting some areas of dispute, in February, 2020. Proposed Jury Instructions ("Pr. Jury Instr."), ECF Nos. 44–45. On July 17, 2020 I requested briefing from the parties regarding any substantive legal disputes. Dkt. Entry (July 17, 2020). Based on my review of the proposed instructions and the briefing, I have prepared a preliminary draft of the jury instructions, which is attached to this Opinion and Order. Below, I will explain the reasoning behind my decisions on the portions of the instructions that the parties disputed.

## I.    GENERAL INSTRUCTIONS

The parties disagree as to whether certain general jury instructions should be given in this case. They also disagree about the appropriate language for certain instructions. I discuss each dispute individually below.

1

A. **Request No. 9: Motive**

The government requests that I charge the jury on motive as follows:

With respect to evidence of a defendant's alleged motives for committing the crimes charged, motive is not a necessary element of the crimes for which the defendants are charged. Proof of motive does not establish guilt, nor does lack of motive establish a defendant is not guilty. If the guilt of a defendant is shown beyond a reasonable doubt, it is immaterial what that defendant's motive for the crime may be or whether his motive was shown at all. Presence or absence of motive is, however, a circumstance which you may consider as bearing on the intent of the defendants, which is an element of some of the offenses that I will describe to you in a moment.

Pr. Jury Instr. 12. The government argues that "the defendants put their motives at issue by asserting that any participation they may have had in Michael Scott Moore's kidnapping was undertaken for innocent reasons." Govt Br. 3. Because the motive of at least one defendant is at issue, the government requests an instruction to clarify to the jury "that motive may help explain, but cannot negate, criminal intent." *Id.* at 4. (citing *Rosemond v. United States*, 572 U.S. 65, 79–80 (2014); *Riley*, 638 F. App'x at 63; *United States v. Sorrentino*, 116 F.3d. 466 at *1 (2d Cir. 1997); *United States v. Edwards*, 101 F. 3d 17, 19 (2d Cir. 1996) (per curiam); *Palacios-Rengifo v. United States*, 09-cr-108 (JSR) 2016 WL 47519 (S.D.N.Y. 2016)).

None of the cases the government cites shed much light on the question of when it is appropriate to include a specific instruction about motive. Some of the cases state legal principles related to motive, but say nothing about the type of jury instruction that the government has proposed here. See *Rosemond* 572 U.S. at 65, *Edwards*, 101 F. 3d 17 at 17–18; *Palacios-Rengifo*, 2016 WL 47519 at *2.

2

In *Riley*, the judge gave a negative response to a jury note asking whether the government was required to prove motive. 638 F. App'x at 63. But the judge did not include a section on motive in the jury instructions, and the Second Circuit did not suggest that he should have done so. See *id.* (stating that the district court acted correctly by "direct[ing] the jury back to the original charge, which included an instruction advising the jury that it must find personal benefit proved beyond a reasonable doubt.").

In *Sorrentino*, the district court instructed the jury that "[g]ood motive alone is never a defense where an act done or omitted to be done is a crime .... except insofar as evidence of motive may aid you as a jury in determining the state of mind or the intent of the defendant." 116 F.3d at *1. The defendant did not object to the instruction at trial, so the circuit court reviewed for plain error. *Id.* The Second Circuit concluded that the instruction was not plain error. *Id.* A finding that the motive instruction was not plain error in the particular context of the Sorrentino case does not mean that it is an appropriate instruction in all cases involving motive.

I agree with the government that it is well-established law that motive cannot negate criminal intent. But I disagree that this legal principle must be explicitly stated in the jury instructions. While Modern Federal Jury Instructions 6-18 does provide language for such an instruction, it provides no guidance for when such an instruction would be appropriate.

The mere fact that motive is relevant to the defense of at least one defendant does not convince me that I should give a specific instruction stating that motive is not an element of any of the offenses. Jury instructions are primarily intended to inform the jury of the elements that are required to convict. My instructions on intent will inform the jury as to the state-of-mind required to establish that element of the offense. I see no need to confuse the issues by affirmatively bringing

3

up motive to emphasize that it is not part of intent. If the government wishes to make that argument

to the jury, it may do so.

 

    **B.**  <u>Request No. 14: Persons not on Trial</u>

      The government requests that I instruct the jury as follows regarding persons not on trial:

      You may not draw any inference favorable or unfavorable towards the government
      or the defendants on trial from the fact that certain persons were not named as
      defendant in the indictment or that certain persons were named as coconspirators,
      but were not indicted.

      The fact that these persons were not indicted must play no part in your deliberations.

Pr. Jury. Instr. 18. The defendants request that I add the language "except that you may consider

whether the witnesses' testimony should be believed because he or she had been granted immunity

or pursuant to a non-prosecution agreement." Def.'s Br. 3.

      The government replied to this request by stating that it "does not intend to call any

witnesses to testify pursuant to a grant of immunity or a non-prosecution agreement." Govt. Reply

5. This essentially moots the defendants' requests. The government also points to the instruction

on confidential sources, which instructs the jury to "consider whether the confidential sources

received any benefits or promises from the Government which would motivate them to testify

falsely against the defendants." Id.; Pr. Jury Instr. 23. I find that instruction sufficient to alert the

jury that they may consider whether the confidential source was granted benefits by the

government. This issue may be revisited if the government decides that it will call witnesses who

have been granted immunity or a non-prosecution agreement..

    **C.**  <u>Request No. 15: Uncalled Witnesses Equally Available to Both Sides</u>

In defendants' initial edits to the government's proposed jury instructions, they argued that this section should be omitted. Pr. Jury Instr. 19. At the time, the defendants alleged that "there are multiple potentially uncalled witnesses available to the Government that are not similarly available to the defense." *Id.* Defendants do not elaborate on that position in this briefing. Given the practical realities of this case, the defendants may even have more access to potential witnesses in Somalia than the government. *See* Govt. Br. 7. Thus, defendants are not prejudiced by this instruction and it will remain in the jury charge.

### D. <u>Request No. 18: False Exculpatory Statements</u>

The government requests an instruction on false exculpatory statements, which the defendants oppose. Pr. Jury Instr. 22. The government alleges that Tahlil made false exculpatory statements during an August 10, 2018 videotaped interview with the FBI. Govt. Br. 8. Specifically, Tahlil "minimized his role in the offense" and "did not name Hassan." *Id.* The government alleges that Hassan made false exculpatory statements during a February 15, 2019 videotaped interview with the FBI. *Id.* Specifically, "Hassan denied ever having met Moore, denied knowing Tahlil, and denied involvement in the charged offenses." *Id.*

In the context of an FBI interrogation, those kinds of vague statements or omissions likely do not rise to the level of warranting a false exculpatory statement instruction. Defendants may present arguments about alleged false exculpatory statements to the jury and ask the jury to draw inferences, without requiring intervention from the court in the form of a targeted jury instruction. However, as both parties request, I will defer final ruling on this issue until the record is further developed. *See* Def.'s Br. 4; Govt. Reply 5.

### E. <u>Request No. 20: Character Witnesses</u>

5

The parties disagree on the correct language for an instruction on character witnesses. See Pr. Jury Instr. 24. The parties appear to be conflating two types of similar witnesses: reputation witnesses and character witnesses. Modern Federal Jury Instructions provides different model jury instructions for each. See 5-14; 5-15. In order to prepare the correct instruction, I will need to know what type of witness the defendants intend to call. Either way, I would give an instruction adapted from Modern Federal Jury Instructions 5-14 for reputation witnesses, or Modern Federal Jury Instructions 5-15 for character witnesses. I defer decision on the precise instruction until the defendants clarify whether they intend to call reputation or character witnesses, or neither.

**F.  <u>Request No. 21: Liability for Acts and Declarations of Co-conspirators</u>**

Defendants object to the following instruction proposed by the government:

> When people enter into a conspiracy to accomplish an unlawful end, they become agents or partners of one another in carrying out the conspiracy. Accordingly, the reasonably foreseeable acts or statements of any member of the conspiracy, committed in furtherance of the common purpose of the conspiracy, are deemed under the law to be the acts or statements of all of the members of the conspiracy, and all of the members of the conspiracy are responsible for such acts or statements. This rule applies even though such acts or statements were not made or committed in the defendant's presence or were made without his knowledge.

Pr. Jury Instr. 25. Defendants are concerned that this instruction "risks being construed by the jurors as a Pinkerton instruction, directing them to hold the defendants liable for the criminal conduct of their alleged coconspirators." Def. Br. 5. Defendants further argue that the instruction "imposes coconspirator liability in a manner that goes well beyond a permissible Pinkerton instruction, using mandatory, rather than permissive, language and imposing liability for acts occurring even prior to the defendant's membership in the conspiracy." *Id.* To cure these problems, defendants ask that the following paragraph from Modern Federal Jury Instructions 19-9 be added:

> However, before you may consider the statements or acts of a coconspirator in deciding the issue of a defendant's guilt, you must first determine that the acts and statements were made during the existence, and in furtherance of, the unlawful

scheme. If the acts were done or the statements made by someone whom you do not find to have been a member of the conspiracy or they were not done or said in furtherance of the conspiracy, they may be considered by you as evidence only against the member who did or said them.

The government responds by suggesting that I adopt the full charge from Modern Federal Jury Instructions, 19-9. I have elected to follow this approach, because I agree that the government's proposed instruction risks juror confusion, but only adding the single paragraph the defendants request would not provide sufficient context for the instruction.

## II.      COUNT FOUR: HOSTAGE TAKING

Count Four charges the defendants with hostage taking. The parties disagree about two instructions in the section describing the standard for hostage taking. First, the parties disagree as to whether an instruction on circumstantial evidence should be included in this section. Second, the parties disagree about how I should instruct the jury regarding aiding and abetting.

### G. __Request No. 31: Purpose of Hostage Taking__

The government requests that I instruct the jury on inferences that can be drawn from circumstantial evidence when I am explaining the intent element of hostage-taking. The requested instruction is as follows:

> Issues of knowledge and intent require you to make a determination about a defendant's state of mind, something that rarely can be proven directly. A wise and careful consideration of all the circumstances before you, however, may permit you to make a determination as to a particular defendant's state of mind. You should apply your common sense and draw such reasonable inferences as may be warranted by the evidence you have heard. This kind of circumstantial evidence, if believed, is of no less relevance than direct evidence. Indeed, in your everyday affairs, you are frequently called upon to determine a person's state of mind from his words and actions in a given circumstance. You are asked to do the same here.

Pr. Jury Instr. 38–39.

Defendants object, arguing that giving this instruction "when discussing any particular element of any particular offense…might unintentionally communicate to the jury that there is a lower standard of proof on that element." Def.'s Br. 6, ECF No. 82. They cite one case in support of their position: *Thomas v. Scully*, 854 F. Supp. 944, 957 (E.D.N.Y. 1994). This case is inapposite. *Thomas* addresses a jury instruction that stated "you may consider the evidence offered by two of the People's witnesses purporting to prove that the fingerprints found at the scene of the crime were those of the defendant." *Id.* at 957. Here, by contrast, the government's proposed instruction does not summarize or even refer to any specific evidence, but instead, generally explains how the jury should use circumstantial evidence. Thus, it does not resemble the charge in *Thomas*.

The government placed the circumstantial evidence instruction directly after the instructions that define "knowingly" and "intentionally" for the jury for the first time. *See id.* This is the appropriate place for this instruction because circumstantial evidence is highly relevant to the jury's determination as to the defendant's state of mind. I see no reason why this instruction would communicate to the jury that there is a lower standard of proof for intent. Instead, the instruction will be helpful to the jurors' understanding of what evidence they may consider and what inferences they may draw when determining whether a defendant acted knowingly or intentionally. *See United States v. Dunloy*, 584 F.2d 6, 12 (2d Cir. 1978) ("Appellant's final claim of error that Judge Motley's instruction explaining to the jury that knowledge, willfulness and intent might be proved by circumstantial evidence diluted the constitutional requirement that these elements be proved beyond a reasonable doubt borders on the frivolous."); *United States v. Salameh*, 152 F.3d 88, 143 (2d Cir. 1998) ("Because as a general rule most evidence of intent is circumstantial, it was perfectly reasonable for the court to emphasize the importance of that type of evidence.").

8

## H. **Request No. 33: Aiding and Abetting**

The first sentence of the government's proposed instruction on aiding and abetting reads:

> With respect to Count Four of the indictment, you may find the defendant you are considering guilty of hostage taking without finding that the defendant personally committed the hostage taking.

Pr. Jury Instr. 41. Defendant asks me to exclude this sentence, arguing that it "tells the jury, in substance, 'don't worry, if the Government has failed to prove the defendant committed the charged offense I'm about to tell you another way you can convict him.'" Def.'s Br 6. That is a mischaracterization of the sentence. Instead, the sentence introduces the concept of aiding and abetting by instructing the jury that a defendant may be convicted of the crime of hostage taking without *personally* committing the elements of the crime himself. This is a correct statement of the aiding and abetting as a basis for criminal liability.

The parties' more substantive disagreement is regarding the standard of intent for aiding and abetting. The defendants request that I include the following sentence:

> To establish that the defendant you are considering knowingly associated himself with the crime of hostage taking, the government must establish that the defendant participated in the offense with the purpose to compel a third party or governmental organization to do or abstain from doing some act as an explicit or implicit[1] condition for releasing the person detained.

Pr. Jury Inst. 42.

The government argues that this instruction does not follow *Rosemond v. United States*, 572 U.S. 65 (2014). But that argument is based on a misreading of that case. *Rosemond* addresses aiding and abetting in the context of 18 U.S.C. § 924(c), which is a "double-barreled crime"

---

[1] I will omit the phrase "explicit or implicit" from the jury charge wherever this phrase appears as I do not think it is necessary or helpful for the jury.

involving both the commission of a drug crime and the use of a firearm. *Id.* at 67, 72. The Court ruled that the defendant need not have taken an affirmative action in furtherance of each of those two elements. *Id.* at 74–75. As to intent, the Court stated it "must go to the specific and entire crime charged….to the full scope of [the statute]." *Id.* at 76. *Rosemond* instructs that jury instructions should state that aiding abetting requires "that the defendant has chosen, with full knowledge, to participate in the illegal scheme–not that, if all had been left to him, he would have planned the identical crime." *Id.* at 79

Thus, *Rosemond* actually supports defendants' requested instruction. The jury should be instructed that defendants must have had the requisite intent to facilitate the entire crime charged. The crime charged includes acting with a purpose to compel a third party or governmental organization to do or abstain from doing some act as a condition for releasing the person detained. The instruction at issue does not charge the jury with finding that the defendant "would have planned the identical crime" but rather that the jury must find that the defendant intended to facilitate "specific and entire crime charged." *Id.* at 76, 79.

The parties' final disagreement on the hostage-taking aiding and abetting instruction is whether to include an instruction on liability under 18 U.S.C. § 2(b). Pr. Jury Instr. 42–43. The government has justified this instruction by asserting that it "expects to introduce evidence that the defendants 'caused' others to commit critical aspects of the offense." Def.'s Br. 15. As long as this evidence is actually introduced at trial, the § 2(b) charge is appropriate.

## III.    COUNT 3 – HOSTAGE TAKING CONSPIRACY

Count Three charges the defendants with participation in a hostage-taking conspiracy. The parties principally disagree about the correct expression of the intent element of the offense and language concerning membership in a conspiracy.

### A.  No. 34 and 36: Hostage Taking Conspiracy Intent

The government requests that the intent element of hostage taking conspiracy be described as "the defendant you are considering knowingly and willfully became a member of the charged conspiracy." Pr. Jury Instr. 45, 48. The defendants initially proposed adding "with the specific intent to commit its underlying offense." *Id.*

The defendants' initial request is wrong as a matter of law. Such an instruction ignores recent cases–*Ocasio v. United States*, 136 S. Ct. 1423, 1429 (2016); *United States v. Ghayth*, 709 F. App'x 718, 720-21 (2d Cir. 2017) – which hold that the government does not have to prove that the defendant intended to commit the underlying offense himself. Rather, the defendant must have intended that the underlying offense be committed.

But defendants are correct that there is a specific intent requirement. Thus, I will use the phrase "with the specific intent that the underlying offense be committed." This compromise language was proposed by defendants and agreed to by the government. *See* Def. Br. 7; Govt. Reply 10.

### B.  No. 36: Requirements for Membership in a Conspiracy

Defendant proposes including the following language in the discussion of participation in a conspiracy:

> In that regard, it has been said that in order for a defendant to be deemed a participant in a conspiracy, he must have had a stake in the venture or its outcome. You are instructed that, while proof of a financial interest in the outcome of a scheme is not essential, you may consider the defendant's lack of such interest in determining whether or not the defendant was a member of the conspiracy charged in the indictment.

11

Pr. Jury. Instr. 48. The government is correct that the Second Circuit has stated that this type of "stake in the venture" instruction is disfavored. *See United States v. Torres*,  901 F.2d 205, 244 (2d Cir. 1990), *abrogated on other grounds by United States v. Marcus*, 628 F.3d 36 (2d Cir. 2010). The court explained that "the use of such an expression would be misleading as [the jury] might infer that there must be a showing of some personal financial interest in the outcome of the conspiracy." *Id.* at 245. Based on this precedent, I will omit defendants' proposed "stake in the venture" instruction.

Defendants now make a new request. They ask that this section of the charge include the following sentence: "In determining whether a defendant willfully participated in the conspiracy with the intent to help achieve its unlawful objective, you may consider whether the defendant had a hostile relationship with his alleged coconspirators, and whether he was in fact acting at cross-purposes with them." Def. Br. 8. I agree with the government that there is no reason to highlight this specific permissible inference for the jury. Govt. Reply 10–11. The jury is permitted to make a variety of inferences from the evidence, and the attorneys may make arguments to the jurors as to which inferences are supported by the evidence. But it is not the role of the judge or the legal instructions to list all potential inferences the jury might draw.

**C.  Request No. 36 Withdrawal from a Conspiracy**

Whether or not I give a withdrawal from the conspiracy instruction will depend on whether sufficient evidence of such a withdrawal is produced at trial. If I do give this instruction, I will likely include the full instruction from *Modern Federal Jury Instructions* § 19-10.

**IV.    COUNT FIVE: THREATENING A U.S. NATIONAL WITH A WEAPON OF MASS DESTRUCTION**

Count Five charges the defendants with threatening a U.S. national with a weapon of mass destruction. The parties disagree about whether the jurors must unanimously agree on one or more threats. The parties also disagree about whether the jury should be instructed as to *Pinkerton* liability for this offense, and if so, what the content of the instruction should be.

### A.  Request No. 40: Unanimity on Particular Threat

The defendants request that I instruct the jury that all the members of the jury must agree unanimously on which threat or threats, if any, satisfy the elements of the offense of threating a United States national with a weapon of mass destruction. The proposed instruction reads as follows:

> Finally, I instruct you that, in order to find that the Government has proven the defendant you are considering guilty of this offense, all 12 of you must agree unanimously on which particular threat or threats you find the defendant to have made that satisfied all of the elements I just described.

Pr. Jury Instr. 54. The government opposes this instruction. Govt. Br. 22.

The offense of threatening a United States national with a weapon of mass destruction, has three elements. *See* 18 U.S.C. § 2332a. The jury must find that (1) the defendant threatened to use a weapon of mass destruction, (2) the threat was against a national of the United States while that person was outside of the United States; and (3) the defendant did not have lawful authority to use or threaten to use the weapon of mass destruction. *See id.* The jury may also find the defendant guilty if he aided and abetted in a crime with those elements, or, under *Pinkerton* liability, if a co-conspirator in the hostage-taking conspiracy committed the elements of the offense in furtherance of the conspiracy.

13

"[A] jury in a federal criminal case cannot convict unless it unanimously finds that the Government has proved each element." *Richardson v. United States*, 526 U.S. 813, 817 (1999) (citing *Johnson v. Louisiana*, 406 U.S. 356, 369–371 (1972) (Powell, J., concurring*); Andres v. United States*, 333 U.S. 740, 748 (1948); Fed. Rule Crim. Proc. 31(a). A threat to use a weapon of mass destruction is undisputedly an element of the offense at issue. Thus, the jurors must come to a unanimous agreement that such a threat occurred, and to do so, they must agree on what that threat was.

The government seeks to complicate this straight-forward analysis by citing a host of inapposite cases that hold that an unanimity instruction may not be necessary in other contexts. *See* Govt Br. 21–22.  The government is correct that jurors need not unanimously agree on details which do not make up an element of the crime, such as "which of several possible means the defendant used to commit an element of the crime." *See Richardson*, 526 U.S. at 817. Thus, in *United States v. Kozeny*, 667 F.3d 122 (2d Cir. 2011), the jury did not need to unanimously agree as to a single overt act taken in furtherance of a conspiracy because "which overt act among multiple such acts supports proof of a conspiracy conviction is a brute fact and not itself element of the crime." *Id.* at 131. In *United States v. Johnson*, 659 F. App'x 674, 679 (2d Cir. 2016), the court held that the jury need not agree unanimously as to the particular firearm the defendant used in a § 924(c) violation. *Id.* at 679. The identity of the gun used in a § 924(c) offense is a detail about the crime, rather than an element of the offense itself, which only requires that a firearm be used. Similarly, *United States v. McIntosh*, 753 F.3d 388, 392 (2d Cir. 2014) states that unanimity is not required "as to the specific means" by which a defendant violated the assault on a federal officer statute. *Id.* at 392; *see also* 18 U.S.C. § 111(a) (stating as the first element of the offense is

satisfied if a person "forcibly assaults, resists, opposes, impedes, intimates, or interferes with [a federal officer]).

Here, the element at issue is that the defendant threatened a victim with a weapon of mass destruction. The government is correct that the jury need not be unanimous as to every detail of the threat, including the specific means by which the threat was made. But the jury certainly needs to be unanimous that one or more threats occurred. If the jury is not unanimous that one or more specific instances constituted a threat with a weapon of mass destruction, the jury is not unanimous that this offense was committed at all, and the jury may not convict.

The government also cites a case involving a continuous course of conduct, a circumstance not relevant here. *See United States v. Estevez*, 961 F.3d 519, 529 (2d Cir. 2020) (possession of a firearm is a "continuing offense" and thus, the "the jury was not required unanimously to pinpoint a precise time at which Estevez possessed the Firearm within the period alleged."). Here, unlike in *Estevez*, we do not have a continuing offense. We have a series of alleged threats, but each particular threat is a discrete act. The jury can, and must, pinpoint at least one specific threat.

Other cases the government cites are irrelevant because they are decisions applying plain error review. *See United States v. Pizzaro*, 797 F. App'x 607, 612 (2d Cir. 2020); *United States v. Denton*, 146 F. App'x 888 (9th Cir. 2005). Jury should instructions should be free from any errors, not just free from plain errors. Even if a failure to include an unanimity instruction does not generally constitute plain error, that does not mean I should not give such an instruction in this case in order to avoid juror confusion.

The most persuasive and relevant case is *United States v. Jordan*, 591 F. Supp. 2d 686 (S.D.N.Y. 2008). In that case, the defendant was charged under § 875(c), a statute which requires "any threat to kidnap any person or any threat to injure the person of another." *Id.* at 687. At trial,

the government presented evidence that Jordan made seven discrete threats against four people via phone, fax, text message, and email. *Id.* at 699–700. Because the existence of a threat was an element of the offense, the jury was instructed that to convict the defendant, the jury "must unanimously agree on at least one threat identified by the Government for Count One that satisfies each of the elements of Count One." *Id.* at 705.

The government argues that the unanimity instruction was appropriate in *Jordan* but is inappropriate in the case at bar because the *Jordan* case "involved a more complex factual scenario." Govt. Br. 21 –22. This argument borders on absurdity. The instant case involves numerous, potentially dozens, of alleged threats against Moore by various members of the alleged conspiracy over a two-and-a-half-year period. There are few cases more factually complex than the instant case, and *Jordan* is certainly not one of them.

For these reasons, I will instruct the jury that it must unanimously agree upon at least one particular threat in order to convict a defendant of threating a United States national with a weapon of mass destruction. I also will include the defendants' request to include the phrase "on a particular occasion" in the aiding and abetting section, in order to underscore that this unanimity requirement also applies to the aiding and abetting theory. *See* Pr. Jury Instr. 55.

## B. Requests Nos. 42 and 54: Pinkerton Liability

The government requests that I instruct the jurors that they can rely on a *Pinkerton* theory of liability to convict a defendant of the offense of threatening a United States national with a weapon of mass destruction. *See* Pr. Jury Instr. 56–57. The government makes this same request regarding the substantive offense of knowing use, carrying or possession of a firearm during and in relation to the commission of the predicate crime. *See id.* at 75.  Pursuant to *Pinkerton v. United States*, 328 U.S. 640 (1946), "a defendant who does not directly commit a substantive offense may

16

nevertheless be liable if the commission of the offense by a co-conspirator in furtherance of the conspiracy was reasonably foreseeable to the defendant as a consequence of their criminal agreement." *United States v. Parkes*, 497 F.3d 220, 232 (2d Cir. 2007).

The defendants reserve the right to object to the *Pinkerton* charge "as the landscape of evidence presented at trial is more fully revealed." Def.'s Br. at 6. I agree with defendants that I cannot make a final determination about whether to include a *Pinkerton* charge before I review the evidence presented at trial. However, given the government's representations about the evidence it will present, it is overwhelmingly likely that the jury instructions will include a *Pinkerton* charge.

A *Pinkerton* instruction is appropriate where there is evidence of the defendant's participation in a general conspiracy, in furtherance of which the substantive offense was committed, particularly when there is less than overwhelming evidence that the defendant personally committed the substantive offense. *Modern Federal Jury Instructions* § 19.03; *United States v. Gleason*, 616 F.2d 2, 19 (2d Cir. 1979); *United States v. Sperling*, 506 F.2d 1323, 1342 (2d Cir. 1974). Under those factual circumstances, *Pinkerton* is a relevant theory of liability because the jury could find that the substantive act was committed by a co-conspirator in furtherance of the conspiracy, and that the act was foreseeable to the defendant. "Whether a particular substantive crime is foreseeable and in furtherance of the conspiracy is a factual question to be determined by the jury." *United States v. Bruno*, 873 F.2d 555, 560 (2d Cir. 1989).

The Second Circuit has cautioned that a *Pinkerton* charge should not be given where there is "a concern that the jury may improperly infer the existence of the conspiracy 'from the series of criminal offenses committed.'" *United States v. Escobar*, 462 F. App'x 58, 67 (2d Cir. 2012) (citing *Sperling*, 506 F.2d at 1341). Here, there is no such concern. The government intends to present evidence of "a single, continuous, concerted effort by a group of men, including the

defendants, to keep Moore captive[.]" *See* Govt. Br. 25. Moreover, the proposed instruction states that the jury may convict under *Pinkerton* liability only "if [the jury] find[s] that the Government has proven beyond a reasonable doubt that the defendant [the jury is] considering was a participant in the hostage-taking conspiracy charged in Count Three of the Indictment, and thus, guilty on that conspiracy count[.]" Pr. Jury Instr. 56.

If the defendants intend to make a formal objection to the *Pinkerton* instructions, they should do so prior to trial. The instruction may be revised if the government does not produce the expected evidence at trial. I will set a briefing schedule for the defendants' *Pinkerton* objection, if any, closer to the date of the trial. I will revisit that pre-trial decision if the evidence at trial is not as anticipated in a way that materially changes the analysis.

The defendants have not briefed any of their objections to the government's proposed language. I find that the government's proposed *Pinkerton* charge is consistent with *Modern Federal Jury Instructions* § 19.03 and that defendants' revisions are not helpful or necessary. However, if the defendants wish to put forth an argument as to the language of the *Pinkerton* instruction, they may do so as part of the forthcoming *Pinkerton* briefing.

## V.    COUNT TWO – PROVIDING MATERIAL SUPPORT FOR ACTS OF TERRORISM

The parties disagree about how to describe the intent required for the offense of providing material support for acts of terrorism under § 2339A.

### A.    <u>Request No. 45: Purpose of Providing Material Support or Resources</u>

The parties agree on the following language regarding intent for § 2339A:

> Second, with respect to Count Two, the Government must prove that the defendant you are considering knew or intended that the provision of such material support or resources would be used in preparation for or in carrying out another crime, either taking hostage a national of the United States, as charged in Count Four, or

threatening to use a weapon of mass destruction against a national of the United States, as charged in Count Five.

I have already instructed you on the elements of these two predicate offenses in connection with Counts Four and Five, and about what it means to act knowingly and intentionally, and you must follow those instructions here as well.

Pr. Jury Instr. 62. The government requested an additional paragraph, which defendants oppose:

Unlike the aiding and abetting statute, which I have previously described to you, however, this element requires you to find only that the supplier of the material support have knowledge that the material support or resources would be used by another in preparation for or in carrying out one of the predicate crimes. It does not require the defendant you are considering to have the specific intention to commit, or the intention to aid or encourage the commission of, the particular crimes of hostage taking or threatening a U.S. national with a weapon of mass destruction.

*Id.*

The government argues that this paragraph is necessary because the mental state required for § 2339A is different the mental state required for aiding and abetting, which is defined elsewhere in the jury instructions. Govt. Br. 26. The instruction the government prefers may be intended to clarify, but it is more likely to confuse. Instead, I will adopt simpler language based on the government's alternative request, *see id.* at 28, and instruct the jury "I note, however, that aiding and abetting is not charged in connection with Count Two."

## VI.     COUNTS SIX AND SEVEN – UNLAWFUL USE OF FIREARMS AND FIRARMS CONSPIRACY

The government and defendants largely agree about the instructions regarding Counts Six and Seven. The defendants did not specifically brief anything relating to these two charges, but I comment briefly on my resolution of issues raised in the draft jury instructions initially submitted.

### A.  Request No. 52: Additional Finding

I have revised the instruction on additional findings to reflect all of the enhancement penalty subsections of § 924(c) charged in the indictment. Specifically, I added instructions regarding discharge and brandishing.

19

**B. Request No. 53: Aiding and Abetting**

Defendants objected to a portion of the government's proposed instruction on aiding and abetting that stated:

> Knowledge of the firearm may, but does not have to, exist before the underlying crime is begun. It is sufficient if the knowledge is gained in the middle of the underlying crime, so long as the defendant you are considering continues to participate in the crime and has a realistic opportunity to withdraw from it. You may, but need not, infer that a defendant has sufficient foreknowledge if you find that that defendant continued his participation in the crime after learning about the use, carrying, or possession of a firearm by confederate.

This instruction is consistent with the *Rosemond v. United States*, 134 S Ct. 1240, 1243 (2014), but I find it unnecessarily confusing and have therefore rephrased it. The final sentence, instructing the jury on one of many permissible inferences, is not necessary and has been eliminated. I will leave it to the parties to make arguments highlighting particular permissible inferences.

**C. Request No. 54: *Pinkerton* Liability**

As noted above, I cannot yet make a decision on the inclusion of a *Pinkerton* instruction, but it is likely that such an instruction will be given. The government's proposed instruction was grammatically incorrect and confusing. I rewrote the instruction to clearly lay out the elements of *Pinkerton* liability, and to refer the juror back to the earlier additional instructions.

**VII.   EYEWITNESS IDENTIFICATION INSTRUCTION**

Defendants initially requested an instruction regarding eyewitness identification. I do not believe that such an identification is necessary because the jury will be hearing from an expert on eyewitness identification, and will be receiving an instruction about expert witnesses. However, if either party still thinks an identification instruction is necessary, they may send a letter brief to the court no later than September 24, 2020.

**CONCLUSION**

The parties are instructed to submit letter briefs to the court by September 24, 2020, addressing the need for an eyewitness identification instruction. If the defendants continue to object to the *Pinkerton* instruction, I will set a briefing schedule on that issue closer to trial. I also defer decision regarding the instructions on false exculpatory statements and character evidence until closer to trial.

SO ORDERED.

___/s/_____

Dated:          August 24, 2020                          Allyne R. Ross

Brooklyn, New York                                      United States District Judge