UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                                   :
UNITED STATES OF AMERICA,                                          :        18-cr-603 (ARR)
                                                                   :
        -against-                                                  :        NOT FOR ELECTRONIC
                                                                   :        OR PRINT PUBLICATION
MOHAMED TAHLIL MOHAMED and ABDI YUSUF                              :
HASSAN,                                                            :
                                                                   :        **OPINION & ORDER**
                        *Defendants.*                              :
                                                                   :
------------------------------------------------------------------ X

ROSS, United States District Judge:

        In September 2021, the parties traveled to Mogadishu, Somalia to conduct depositions of

three defense witnesses pursuant to Federal Rule of Criminal Procedure 15. Both the government

and Mr. Hassan have moved to strike portions of the testimony. I rule as follows:

**<u>Approach to Waiver</u>**

Before addressing the individual objections, I first address defense counsels' argument—made in

response to several of the government's objections—that where the government failed to provide

the specific grounds for an objection during the depositions, the objection should be deemed

waived under Rule 15 of the Federal Rules of Criminal Procedure.

- Rule 15(g) states that "[a] party objecting to [Rule 15] deposition testimony or evidence

    must state the grounds for the objection during the deposition." Fed. R. Crim. P. 15(g).

    As explained in the Advisory Committee Note on Federal Rule of Criminal Procedure 15,

    the purpose of this rule is to "[e]nsure that a record of objections and the grounds for the

    objections is made at the time the deposition is taken when the witness is available so that

    the witness can be examined further, if necessary, on the point of the objection so that

there will be an adequate record for the court's later ruling upon the objection." Fed. R. Crim. P. 15(f), Advisory Comm. Note (discussing 1974 Amendment).

- Based on the text of Rule 15(g) and on the Advisory Committee Note, at least two courts have found that objections to the form of a question raised for the first time in post-deposition briefing are waived because the deposing party was not afforded an opportunity to cure the defect in their line of questioning. *See United States v. Al Fawwaz*, No. S7 98-CR-1023 (LAK), 2015 WL 708959, at *1 (S.D.N.Y. Feb. 17, 2015); *United States v. Bertoli*, 854 F. Supp. 975, 1021 (D.N.J. 1994), *aff'd in part, vacated in part*, 40 F.3d 1384 (3d Cir. 1994). I agree with these courts and further find that substantive objections—such as for hearsay, relevance, and foundation—are also waived if the party raising them did not object during the deposition itself. I base this finding on the text of Rule 15(g) as well as on the purpose of the Rule as laid out in the Advisory Committee Note, which is to ensure that a party examining a Rule 15 witness has an opportunity to cure an objectionable line of questioning or testimony. Though the examining attorney may not be able to cure testimony that is based on hearsay or that lacks a foundation, Rule 15 indicates that the attorney should at least be given a fair chance to try.

- Accordingly, I will treat objections raised for the first time during briefing as waived. As for objections that were made during the depositions but for which no specific grounds were given at the time, I am guided again by the text and purpose of Rule 15(g) and will treat these objections as waived if the basis of the objection was not clear at the time it was made. The reason for this is simple: if the basis for the objection was unclear, then defense counsel cannot be said to have had an opportunity to cure the matter objected to. To sustain the objection would go against the spirit of Rule 15(g). If, however, the basis

2

of the government's objection is so self-evident that it can be presumed to have been apparent to defense counsel at the time it was made, then I will not consider the government's objection waived. In making this assessment, I will consider the context in which the objection was made, paying particular attention to the testimony or questions directly preceding the objection. For example, if a witness were to say, "Then Mr. Hassan told me that he opposed the pirates" and the government were to object immediately after, I would almost certainly conclude that defense counsel was on notice of a hearsay objection and that the government's hearsay arguments in its briefing were not waived.

- There are a few aspects of this framework that are worth noting:

- First, in deciding whether the basis of the government's objection was self-evident, I consider *only* the bases proffered by the government in its post-deposition briefing. In other words, if the government objected during a deposition and there was a basis for that objection that was clear in context but the government has not briefed that basis, I do not consider that basis to be raised.

- Second, in cases where the government in its briefing has proffered alternate grounds for an objection made during the depositions, I consider the merits only of those grounds that would have been apparent to defense counsel at the time of the deposition.

- Finally, in deciding whether the basis for an objection would have been evident to defense counsel at the time of the deposition, I consider the guidance given to both parties in my April 2020 Opinion allowing the Rule 15 depositions. *See United States v. Mohamed*, No. 18-CR-603, 2020 WL 1545522, at *6−7 (E.D.N.Y. Apr. 1, 2020). In my Opinion, I warned defense counsel that the key admissibility issues for many of the Rule 15 witnesses would be hearsay and lack of foundation and outlined specific areas of

anticipated testimony that I believed would be inadmissible on one or both of these grounds. In light of this guidance, I consider the government's hearsay and foundation objections to portions of testimony I flagged as potentially inadmissible for hearsay and/or lack of foundation to have been self-evident at the time of the depositions. It cannot be said that defense counsel was not on notice or did not have an opportunity to cure this testimony when I specifically raised the potential issues in my earlier opinion. When the government raises these bases in its briefing on portions of the witnesses' testimony I identified as potentially inadmissible, I consider the merits of its arguments because defense counsel was on notice.

- Having explained the framework that I will apply in situations in which defense counsel argues waiver under Rule 15(g), I now turn to the parties' specific objections.

## <u>Government's First Objection</u>

*Mohammad Nur Ali, 19:9–22:15*

The government's first objection involves a portion of Mr. Ali's testimony in which he discusses Mr. Hassan's involvement in charitable works in Somalia prior to 2014.

- As an initial matter, I disagree with Mr. Hassan's argument that the government waived this objection by not stating the grounds during the deposition. The government raised an objection immediately following defense counsel's question about Mr. Hassan's involvement in charitable works in Somalia prior to 2014; though it did not specify the grounds, I find that the basis for the objection would have been clear in context, given that it is not clear and was not clear at that time how Mr. Hassan's charitable works would relate to the acts he is charged with. Under the approach I explained above, I disregard Mr. Hassan's waiver argument.

- Turning to the merits, I find that the testimony about Mr. Hassan's charitable works prior to 2014 is minimally relevant to the key issues at trial—namely, whether Mr. Hassan was involved in the plot to kidnap Michael Moore and what, if anything, he did to undermine that plot. Though Mr. Hassan argues that his charitable acts, including building educational facilities and delivering medicine in Somalia, are relevant because they show that he hoped to "promote Somalia's self-sufficiency," which would have put him at cross-purposes with the pirates and undermined the government's theory that he was involved with the kidnapping, this connection is tenuous and requires many inferential leaps not in the record about why Mr. Hassan performed the charitable acts, what their ultimate goal was, and what the ultimate goal of the pirates was. Against this minimal probative value, there is a risk that the discussion of Mr. Hassan's charitable works would confuse the issues, amount to improper character evidence, and prejudice the jury. Accordingly, I find this testimony inadmissible under Rule 403.

- Though Mr. Hassan argues that I should admit the testimony under Rule 404(b), I reject this argument as well. Rule 404 prohibits character evidence when used "to prove that on a particular occasion the person acted in accordance with the character or trait" but allows evidence of specific acts to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Mr. Hassan appears to argue that evidence of his charitable acts proves motive or intent for the same reason explained above: that these acts show he was at cross-purposes with the goals of the pirates. But as I discussed previously, the connection between Mr. Hassan's charitable work and his purported goal of undermining the pirates is tenuous at best, requiring a number of unsupported inferences; moreover, and as the government points out, it appears, given

how tenuous the connection is, that most of these inferences would be based on impermissible character-based reasoning.

- I therefore sustain the government's objection and strike transcript lines 19:9 to 22:15 under Rule 403.

## Government's Second Objection

*Mohammad Nur Ali, 29:9–37:5*

The government's second objection concerns the portion of the transcript in which defense counsel played a video for Mr. Ali and asked questions about what was shown on screen. The government objects on the basis of hearsay, arguing that I should not admit the statements made by people in the video recording. As the transcript currently stands, however, there is no record of statements made in the video recording; rather, the transcript consists of Mr. Ali identifying people in the video and which ones were speaking at different times. Because there are no hearsay statements currently in this portion of the transcript and the government does not offer any other basis for its objection, I overrule the objection.

However, Mr. Hassan has indicated that he may seek to admit a transcript of the ceremony recorded on the video. If and when he does so, I will allow the parties to submit arguments on the admissibility of that video.

## Government's Third Objection

*Mohammad Nur Ali, 40:16–47:7*

In its third objection, the government asks me to strike transcript pages 40:16 to 47:7, in which Mr. Ali discusses Mr. Hassan's purported anti-piracy views, as hearsay and as lacking foundation.

- In response, Mr. Hassan first argues that the government has waived its objection by not providing the grounds during the deposition itself. While Mr. Hassan is correct that the

government did not provide grounds at the time, the government's objection came after my 2020 opinion, in which I noted that I did "not see sufficient foundation for Mr. Ali's testimony that [Mr.] Hassan was 'fervently committed to anti-piracy efforts" and that much of his testimony "appears to be pure hearsay, such as [Mr. Hassan's] public statements, statements by pirates, a report of a planned assassination attempt, and [Mr.] Hassan's conversations with [Mr.] Ali." In that opinion, I advised: "If the parties proceed with these depositions, the defendants must establish proper foundation for witness statements in order to produce any evidence that will actually be admissible at trial. The key admissibility issues will be hearsay and the absence of sufficient foundation." In light of these comments, I find that the basis for the government's objection to the exact portion of Mr. Ali's testimony I identified was clear in context. The government did not waive this argument.

- Moving on to the merits, I find that this portion of the transcript consists of hearsay or of testimony premised and dependent on hearsay statements—namely, Mr. Hassan's out of court statements against piracy and the actions of other people in response to those statements. Mr. Hassan argues that the statements fall under the 803(3) hearsay exception for the declarant's then-existing state of mind because they are offered to explain "Mr. Hassan's intent and motive for speaking with or attempting to speak with pirates" and/or his "own intent to combat the pirates." I agree with the government that to adopt these arguments would be to "make an end-run" around the federal hearsay rules: to the extent these statements shed light on what Mr. Hassan intended to do with regard to the pirates who kidnapped Mr. Moore, they do so only if they are offered for the truth of what was asserted—i.e. that Mr. Hassan, as a general matter, spoke out against the pirates and was

opposed to them. Mr. Hassan's general statements on and positions against piracy are too broad to be considered "state of mind" and are not statements of intent relevant to this case.

- Mr. Hassan additionally claims that the statements are nonhearsay because they are offered to show their effect on Mr. Ali—namely, his choice to provide Mr. Hassan with additional security protection. However, whether Mr. Ali provided Mr. Hassan with additional security protection is not relevant to any material issue in the case: as far as I can tell, the security services Mr. Hassan had will not play a role in the government's case or in Mr. Hassan's defense. I therefore reject Mr. Hassan's effect on the listener argument. *Cf., e.g., United States v. Silva*, 380 F.3d 1018, 1020 (7th Cir. 2004).

- Because this portion of the transcript consists of hearsay that does not fall under any exception, I strike it under Rules 801 and 802.

**Government's Fourth Objection**

*Mohammad Nur Ali, 48:12–49:7*

In its fourth objection, the government asks me to strike transcript pages 48:12 to 49:7, in which Mr. Ali testifies to conversations he and Mr. Hassan had with clan elders urging the elders to convince the pirates to release their hostages. The government argues that these statements constitute hearsay.

- Mr. Hassan raises his waiver argument here too, but for the reasons articulated in my ruling on the government's third objection, I do not consider the hearsay objection waived.

- Though the testimony in question here certainly consists of out-of-court statements made by Messrs. Ali and Hassan, Mr. Hassan argues that it should be admitted because "it will be offered to prove Mr. Hassan's state of mind and actions contrary to the objectives of the conspiracy" and "to explain why [Mr. Ali] provided Mr. Hassan with heightened security

protection." I reject the first and the third arguments for the reasons I explained in ruling on the government's prior objection: that Mr. Ali provided Mr. Hassan with heightened protection does not appear to be relevant to the case, and allowing hearsay evidence to show Mr. Hassan's general "state of mind against pirates" would allow the 803(3) exception to swallow the rule. As for the second argument, I am unaware of any hearsay exception for "actions contrary to the objectives of [a] conspiracy"; to the extent Mr. Hassan is arguing that these statements demonstrate his intent or motive, my previous explanation applies here as well.

- I therefore grant the government's motion to strike 48:12 to 49:7; I also strike 48:8 to 48:11 in the interest of cohesion and clarity of the transcript.

## Government's Fifth Objection

*Mohammad Nur Ali, 56:14–58:18*

The government next moves to strike 56:14 to 58:18 as hearsay and lacking a sufficient foundation. The defense does not respond, and I agree with the government's position. I therefore strike these lines, in addition to 56:10 to 56:13, which constitute defense counsel's first attempt to ask Mr. Ali the question that resulted in the objectionable response.

## Government's Sixth Objection

*Mohammad Nur Ali, 63:6–64:2*

The government's sixth objection concerns lines 63:6 to 64:2, in which Mr. Ali testified that Mr. Hassan was against piracy and that he had never seen Mr. Hassan with pirates. The government objects on the grounds of hearsay and foundation.

- Though the defense again argues that the government has waived its objection, I disregard this argument for the reasons outlined in my ruling on the government's third objection.

9

- On the merits, I agree with the government that 63:6 to 63:15 should be struck: while Mr. Ali testified that Mr. Hassan "was against the piracy," was "fighting against them," and "was speaking against them" and that "they wanted to kill him," he did not explain how he knew Mr. Hassan's position and statements against piracy or the pirates' desire to kill Mr. Hassan. If there is a basis for Mr. Ali's knowledge, it appears to be Mr. Hassan's own statements, which amount to hearsay. Though Mr. Hassan argues that the statements fall under a hearsay exception or exclusion because they "will be offered to prove Mr. Hassan's state of mind against pirates and to explain why [Mr. Ali] provided Mr. Hassan with heightened security protection," I have already explained why I find these arguments unpersuasive. For the same reason, I agree with the government that line 63:23 starting with "He's against them" up to line 64:2 up through "meeting with the" should also be struck.

However, I admit line 63:16 to line 63:23 up through "him with those guys" and also admit line 64:2 starting with "And I've never saw." This portion of the testimony does not explicitly or implicitly rely on an out-of-court statement by Mr. Hassan; rather, it consists of Mr. Ali explaining his observation that he never saw someone he believed to be a pirate at Mr. Hassan's house. It is therefore not hearsay, and I further find that a sufficient foundation has been laid for it: as Mr. Ali explained earlier in the deposition, he provided security for Mr. Hassan over an extended period of time and was aware of his daily movements and activities. Mr. Ali was thus qualified to testify that, over his time knowing Mr. Hassan, he never personally saw a person he knew or believed to be a pirate at Mr. Hassan's house.

**Government's Seventh Objection**

*Mohammad Nur Ali, 90:25–91:6*

The government's seventh objection is to lines 90:25 to 91:6. It argues that defense counsel's question was leading and that the question and answer should therefore be struck from the transcript.

- There is no dispute that the question—"In fact, there are pirates in several of the clans. Correct?"—is leading. However, I will exercise my discretion to allow the question and answer. For one thing, the question is closely tied to Mr. Ali's previous testimony. Though the government is correct that he had not at that point said that there are pirates in several clans, on page 76 the government asked Mr. Ali whether he knew "*which* clan was responsible for the kidnapping of Michael Scott Moore." This is not quite the same as testimony that directly stated that there "are pirates in several of the clans," but I find that this passage suggests that there were pirates in more than one clan. I am also sensitive to the difficult conditions the attorneys and witnesses were working under, as detailed by Mr. Hassan, and the possibility of translation issues or imprecisions. Finally, I find that the prejudice to the government in allowing this question and answer—which are not even about Mr. Hassan and the truth of which the government does not appear to dispute—is minimal. I therefore overrule this objection.

**Government's Eighth Objection**

*Mohammad Nur Ali, 91:24–92:12*

The government's eighth objection is to 91:24 to 92:12, and it raises both foundation and hearsay. Though I disagree with the government's foundation arguments, I agree that this portion of testimony, which relates the contents of conversations Mr. Ali and Mr. Hassan had with clan elders about how to effectuate the release of Michael Moore, constitutes inadmissible hearsay. Mr. Hassan responds that the statements "demonstrate Mr. Hassan's "state of mind and actions that go

contrary to the hostage takers," but, for the reasons I have already discussed, I do not find these arguments convincing.

**Government's Ninth Objection**

*Mohammad Nur Ali, 93:4–93:9*

Next the government objects to 93:4 to 93:9, where Mr. Ali answers "no" when defense counsel asks him, "To your knowledge, was [Mr. Hassan] a pirate?"

- The government argues that this testimony lacks foundation because Mr. Ali could not "assert definitively" that Mr. Hassan was not a pirate. While I agree that Mr. Ali had no foundation to make any such definitive assertion, the transcript makes clear that Mr. Ali was testifying only "to [his] knowledge." This knowledge was grounded in his years in law enforcement and the extended period of time in which Mr. Ali knew Mr. Hassan, provided his security, and was aware of his daily movements. As I put it in my 2020 opinion, witnesses are permitted to "attest to their conclusions if they are supported by direct observations or admissible statements." In this case, Mr. Ali's conclusion that, to his knowledge, Mr. Hassan was not a pirate, was supported by his direct observations. I therefore reject the government's argument that Mr. Ali lacked foundation for this statement.

- The government also suggests that while Mr. Ali may have been able to testify that he "never witnessed [Mr. Hassan] engaging in piracy, he did not have the foundation to say he was "not a pirate." I find this to be a distinction without a difference: if Mr. Ali, based on his knowledge and observations, could assert that he had not witnessed Mr. Hassan engaging in piracy, it follows that he could assert that, to his knowledge, Mr. Hassan was not a pirate.

- I overrule the government's ninth objection.

## Government's Tenth Objection

*Mohammad Nur Ali, 93:22–94:4*

The government's tenth objection is to 93:22 to 94:4, where it argues that "[d]efense counsel's questions regarding a hypothetical scenario call[] for speculation on the part of the witness." Mr. Hassan argues that the hypothetical question was appropriate because the record supports the assumption underlying the question—namely, that it was possible that elders in the Sa'ad clan who wanted Michael Moore released would ask that somebody be appointed to accomplish this.

- In *United States v. Cuti*, 720 F.3d 453 (2013), the Second Circuit explained that hypothetical questions are permissible where the questions are "limited by the factual foundation laid in earlier admitted testimony and exhibits" and where the witness' answers are based on undisputed facts, leaving "little room for . . . speculation." Here, there is no such factual foundation, as nowhere in the record currently before me does Mr. Ali testify that the elders may have attempted to get somebody appointed to release Michael Moore or any other hostage. Because Mr. Ali's testimony falls on the opinion end of the "fact-opinion spectrum" discussed in *Cuti*, I sustain the government's objection and strike these lines.

- I note, however, that Mr. Hassan argues that "further factual foundation [for defense counsel's question] will be elicited at the trial." If defense counsel does in fact lay a factual foundation for this question, I will be open to revisiting my ruling at trial.

## Government's Eleventh Objection

*Mohammad Nur Ali, 94:5–94:19*

The government's eleventh objection—its final one regarding Mr. Ali's testimony—is to 94:5 to

94:19. The government argues that this portion constitutes inadmissible hearsay and/or lacks a foundation.

- To begin with, I reject Mr. Hassan's waiver argument: as I articulated in my ruling on the government's third objection, this kind of hearsay/foundation objection to Mr. Ali's testimony about Mr. Hassan's activities and beliefs is one I forecast in my 2020 opinion. I therefore do not consider the hearsay objection waived.

- Moving to the merits, I agree with the government. In this portion of the transcript, defense counsel asks Mr. Ali if it was part of Mr. Hassan's "mission to have Michael Scott Moore released" and whether this was "one of the reasons he was appointed." Based on the record, Mr. Ali does not appear to have any personal knowledge that would allow him to answer these questions: though Mr. Hassan argues that his testimony that he had personal knowledge of Mr. Hassan's daily activities provides the foundation, I fail to see how Mr. Ali's knowledge of Mr. Hassan's activities would give him insight into why the Somalian government appointed him Minister of the Interior or what his "mission" was. The only possibility I can see as to how Mr. Ali learned of the reason Mr. Hassan was appointed is that Mr. Hassan told Mr. Ali. If that is the case, however, Mr. Ali's testimony would be based on inadmissible hearsay. Mr. Hassan again attempts to argue that the testimony falls into a hearsay exception because the possible statements "explain why [Mr. Ali] provided Mr. Hassan with heightened security protection," but I have already explained why I find this line of reasoning unpersuasive.

- Because this testimony lacks a non-hearsay foundation, I sustain the government's objection and strike it from the record.

**Government's Twelfth Objection**

*Said Osman Warsame, 4:12–5:3*

Moving to Mr. Warsame's deposition, the government's first objection—and twelfth overall—is to 4:12 to 5:3, where defense counsel reads from two identity cards, asking Mr. Warsame to confirm the information they contain. The government argues that these lines should be struck because the identity cards were not offered into evidence. Though Mr. Mohamed claims that there is "no requirement that all documents discussed at a deposition must be offered into evidence," in this case the documents were not simply discussed: their contents were read directly without being authenticated or admitted. I therefore agree with the government and strike these lines.

**Government's Thirteenth Objection**

*Said Osman Warsame, 15:24–17:3*

The government's thirteenth objection is to 15:24 to 17:3, in which Mr. Warsame describes hearing from community members that Michael Moore and two men from Germany were in Somalia. The government argues that this testimony is "classic hearsay and lacks a proper foundation."

- Beginning with the foundation objection, I agree with the government that the record does not indicate that Mr. Warsame had personal knowledge of the *contents* of what the community members said to him; in other words, he did not personally know whether Michael Moore was in fact in Somalia. However, it is clear that Mr. Warsame had personal knowledge of what the community members *said* to him for the simple reason that they said it to him. The real issue, therefore, is whether their statements constitute inadmissible hearsay or whether they fall under an exception or exclusion to the hearsay rule.

- Mr. Mohamed argues that they are admissible under Rule 801(c) because they are "not offered for the truth of the statement[s]" but rather for their effect on Mr. Warsame. *See United States v. Dupree*, 706 F.3d 131 (2d Cir. 2013). To fall under this exclusion, the

hearsay statement's effect on the listener must be relevant to a material issue in the case, *see Ryan v. Miller*, 303 F.3d 231 (2d Cir. 2002)—"effect on the listener" is not a catch-all argument allowing the admission of any statements the listener may have had a reaction to. Here, however, I find that the effect of this information on Mr. Warsame *is* relevant to a material issue and is not being offered for the truth of the matter. Mr. Warsame testified that, after various failed attempts to get Michael Moore released by other means, he and clan elders decided to send Mr. Mohamed to infiltrate the group to accomplish this objective. This testimony is key to Mr. Mohamed's defense that he did not have the required mens rea for the crimes he is charged with. Though the portion of testimony most relevant to Mr. Mohamed's defense is, of course, the portion concerning the infiltration mission, the background information regarding what Mr. Warsame knew or believed about Michael Moore and the earlier attempts to free him is also relevant in helping the jury understand how Mr. Warsame arrived at his choice to send Mr. Mohamed in to infiltrate. And whether Michael Moore was in fact in Somalia or whether those earlier attempts actually took place—in other words, the truth of the matter asserted—is significantly less important than what Mr. Warsame believed happened in the leadup to this choice.

- I therefore admit these lines of testimony. I will, however, issue a limiting instruction making clear to the jury that they are to consider the out-of-court statements *only* with respect to their effect on Mr. Warsame.

## Government's Fourteenth Objection

*Said Osman Warsame, 32:6–9*

The government's next objection is to lines 32:6 to 32:9. It argues that defense counsel's question was leading and that the question and answer should therefore be struck from the transcript. Mr.

Mohamed responds that it was "not a leading question but an appropriate summary of prior testimony." There is no doubt that the question—"One response was by the elders of the Nimele clan. Correct.?"—was leading. And in spite of his assertion, Mr. Mohamed does not identify any prior testimony being summarized, and I do not see any in the record. I therefore sustain the government's objection and strike these lines.

### Government's Fifteenth Objection

*Said Osman Warsame, 32:10–36:23, 38:14–39:10*

The government's fifteenth objection is to lines 32:10 to 36:23 and lines 38:14 to 39:10, in which Mr. Warsame describes a "militia-based response" to the pirates by the Nimale clan, which he learned about from clan elders. The government argues that Mr. Warsame had no foundation and that any knowledge he had of these events was based on hearsay. The government additionally claims that defense counsel improperly led the witness when, on page 39, she asked a question summarizing Mr. Warsame's prior testimony.

- Regarding the government's hearsay and foundation objections, I refer to my ruling on the thirteenth objection. For the same reasons I elaborated on there, I find that this testimony is admissible to show the effect of the elders' statements on Mr. Warsame—namely, he learned about the failure of the attempted militia-based response and therefore developed the infiltration plan involving Mr. Mohamed. I will, however, issue a limiting instruction to the jury explaining that this testimony should be considered only for its effect on Mr. Warsame.

- As for the government's objection to defense counsel's leading question on page 39, I find that this question accurately and helpfully summarizes the testimony Mr. Warsame gave in the preceding lines and that the question and answer, which amount to Mr. Warsame saying

that the elders and Nimele clan "came up with a way to move forward" in their attempts to rescue Michael Moore, are minimally prejudicial to the government. I therefore exercise my discretion to allow the leading question and Mr. Warsame's answer.

- The government's objection to these lines is thus overruled.

**<u>Government's Sixteenth Objection</u>**

*Said Osman Warsame, 41:15–44:12*

The government next objects to 41:15 to 44:12, in which Mr. Warsame describes a plan he and the elders came up with to have the elders pressure their family members who were pirates to return home. Again, the government objects based on hearsay and lack of foundation, while also taking issue with various leading questions from defense counsel.

- As for the government's foundation objection, Mr. Warsame testified that he was present at the planning meetings and in fact came up with this plan himself—testimony that, contrary to the government's suggestion, he did not contradict during cross-examination. There is therefore no question that he had personal knowledge for his testimony regarding the details of the plan. As for the outcome of the plan—that the elders failed in the goal of getting their family members to return—the government is correct that Mr. Warsame's knowledge appears to be based solely on hearsay. I refer, however, to my ruling on the thirteenth objection. For the same reasons I elaborated on there, I find that this testimony is admissible to show the effect of the elders' statements on Mr. Warsame—namely, he learned about the failure of this "first plan" and therefore developed the infiltration plan involving Mr. Mohamed. I will, however, issue a limiting instruction to the jury explaining that this testimony should be considered only for its effect on Mr. Warsame.

- As for the government's argument that defense counsel's questions were impermissibly leading, during the deposition the government failed to object to any of the leading questions from page 43 to 44 except the last one: "And your idea was to see if you could help Michael Scott Moore a different way." Under the approach to waiver articulated above, I find that, to the extent the government is objecting to any leading question but the last one, those objections are waived. As for that final question, though it is undoubtedly leading, I find that it accurately summarizes Mr. Warsame's testimony from pages 41 to 42, where he explains that he came up with a "second plan" after the "first plan" failed. I also find that the question and answer are minimally prejudicial to the government, as Mr. Warsame then goes on to describe at length the "second plan" he came up with. I therefore exercise my discretion to allow the leading question and Mr. Warsame's answer.

## Government's Seventeenth Objection

*Said Osman Warsame, 52:17–53:9*

The government's next objection is to 52:17 to 53:9, in which Mr. Warsame explains that Mr. Mohamed told him that his father died when he was young and that the family did not have enough food to eat. I agree with the government that this testimony constitutes inadmissible hearsay. Mr. Mohamed argues that it is admissible because it is not being introduced for the truth of the statements, but rather to "show the length of the relationship between Mr. Warsame and Mr. Mohamed." But the details of Mr. Mohamed's life before he even knew Mr. Warsame do not demonstrate how long the two men knew each other, nor do they have much bearing on the nature of their relationship. I therefore strike these lines.

## Government's Eighteenth Objection

*Said Osman Warsame, 53:18–55:6*

The government's eighteenth objection is to 53:18 to 55:6, which it claims consists of testimony that is not relevant. The testimony from 53:18 to 54:3, about the prevalence of hunger and poverty in Somalia in general, is certainly irrelevant and I grant the government's request to strike it from the record. The rest of the objected-to portion is more relevant, as it relates to Mr. Mohamed appearing thin and hungry when Mr. Warsame first met him and Mr. Warsame's efforts to provide him with food and money over the two years they knew each other. Mr. Mohamed argues that this testimony "provides context" regarding Mr. Warsame and Mr. Mohamed's relationship and is therefore "material to the weight and credibility to be accorded" to Mr. Warsame's testimony. Though I do not find this testimony particularly important in establishing that Mr. Mohamed and Mr. Warsame had a close relationship, it is at least minimally relevant. It is also not particularly prejudicial to the government. On page 53, in a section the government did not object to, Mr. Warsame testified that Mr. Mohamed appeared "to be thin and skinny like a person who didn't have enough food to eat"; the added detail that Mr. Warsame sometimes fed him seems unlikely to confuse any issues, mislead the jury, or make the jury feel more sympathetic to Mr. Mohamed or Mr. Warsame. I therefore admit these lines under Rules 401 and 403.

## Government's Nineteenth Objection

*Said Osman Warsame, 72:17–74:3; 74:25–75:19*

The government next objects to 72:17 to 74:3 and 74:25 to 75:19, arguing that Mr. Mohamed claimed to be testifying to the practices of pirates as an "expert" without being qualified as one under the Federal Rules of Evidence.

- Under Rule 701, lay witness testimony may not be based on "scientific, technical, or specialized knowledge within the scope of Rule 702." As the Second Circuit has interpreted it, this Rule means that a lay witness cannot testify to an opinion if his "reasoning process

[in reaching that opinion] depended, in whole or in part, on his specialized training and experience." *United States v. Garcia*, 413 F.3d 201, 216 (2d Cir. 2005); *see also United States v. Yannotti*, 541 F.3d 112 (2d Cir. 2008); *Bank of China, N.Y. Branch v. NBM LLC*, 358 F.3d 171 (2d Cir. 2004). Applying that rule here, while Mr. Warsame would be able to testify to his opinions about or observations of the pirates' practices based on his interactions with them as part of the community, he is not permitted to testify to opinions based on his professional training. Yet that is exactly what he did here, as he made clear that his belief that pirates "don't allow anybody with them to possess a phone" was based on his "many years of experience working in rescuing hostages and working in NGOs."

- Because Mr. Warsame purported to testify as an expert without being qualified as one under Rule 702, I strike the lines the government has identified. I also strike 74:4 to 74:24 and 75:20 to 75:21 in order to eliminate confusion and make the version of the transcript that will be admitted clearer.

### Government's Twentieth Objection

*Said Osman Warsame, 77:13–78:15*

Next the government objects to 77:13 to 78:15, arguing that "[t]he witness's testimony regarding information he was told by the defendant is inadmissible hearsay." I agree: Mr. Warsame's testimony that Mr. Mohamed told him that he was in Hobyo looking for the pirates is clearly hearsay.

- Mr. Mohamed offers two arguments to the contrary, neither of which I find convincing. The first is that the statement was offered "to explain [Mr.] Warsame's state of mind." To the extent Mr. Mohamed is referring to Rule 803(3), he misunderstands the rule: that exception applies when hearsay statements reveal *the declarant's* state of mind, not the

listener's. To the extent he is in fact making an "effect on the listener" argument, as suggested by his citations, it is not clear what effect the statement even had on Mr. Warsame, much less why the effect would be relevant without the underlying statement being true. Mr. Mohamed's second argument is that the statement falls under 803(1)'s present sense impression exception to hearsay. As defined by the Federal Rules of Evidence, a present sense impression is "a statement describing or explaining an event or condition made while or immediately after the declarant perceived it." These statements are "considered to be trustworthy because the contemporaneity of the event and its description limits the possibility for intentional deception or failure of memory." *United States v. Jones*, 299 F.3d 103, 112 (2d Cir. 2002). In this case, the statement at issue—that Mr. Mohamed was in Hobyo—does not describe a specific "event or condition" that Mr. Mohamed perceived externally; rather, it is his own account of his general location, which he could easily have been lying about. Because Mr. Mohamed's statement fits within neither the language nor the purpose of 803(1), I reject his second argument as well.

- I sustain the government's objection and strike these lines as inadmissible hearsay.

## Government's Twenty-First Objection

*Said Osman Warsame, 83:1–84:20*

Moving to the government's twenty-first objection, the government claims that Mr. Warsame's testimony from 83:1 to 83:23 is inadmissible hearsay, while his testimony from 83:24 to 84:20 lacks foundation.

- I strike 83:1 to 83:23 as hearsay not within an exception or exclusion. Mr. Warsame's testimony about what Mr. Mohamed told him regarding Michael Moore is clearly an out of court statement that would not be relevant to Mr. Mohamed unless it were true. Mr.

Mohamed argues that the statements at issue are not hearsay because they reveal Mr. Warsame's state of mind, because they are being offered to show their effect on Mr. Warsame, and/or because they are Mr. Mohamed's present sense impressions. As explained in my ruling on the government's twentieth objection, this first argument misunderstands Rule 803(3), which applies for the declarant's state of mind, not the listener's. For his second argument, I also refer to my ruling on the government's twentieth objection. As there, Mr. Mohamed has not explained what effect the statements had on Mr. Warsame, much less why the effect would be relevant without the underlying statements being true. Finally, Mr. Mohamed's present sense impression argument fails because, as the government points out, "[t]here is no basis in the record that [Mr. Mohamed] was relaying something he was contemporaneously observing in the moment or something he had just visually witnessed." Accordingly, I cannot determine whether the statements were made "while or immediately after the declarant perceived" the events described, as Rule 803(1) requires.

- Moving to 83:24 to 84:20, I note that the government did not make any objection—to foundation or otherwise—to this portion of Mr. Warsame's testimony at the deposition. As I explained when outlining my general approach to waiver, the government may not object to testimony for the first time in its post-deposition briefing. However, I also strike these lines for the sake of clarity and avoiding juror confusion, as they necessarily rely on the stricken hearsay testimony and make little sense without it.

- I therefore sustain the government's objection.

**Government's Twenty-Second Objection**

*Said Osman Warsame, 86:9–89:23*

The government's twenty-second objection is to 86:9 to 89:23, in which Mr. Warsame describes conversations he had with Mr. Mohamed during and after Mr. Mohamed's time with the pirates. The government argues that this portion of the transcript constitutes and/or incorporates inadmissible hearsay, and I agree.

- Mr. Mohamed argues that the beginning of this section, in which Mr. Warsame recounts Mr. Mohamed telling him about a dental problem he was having, is admissible because "it is being introduced not for the truth but to cast light on the strength of the relationship between Mr. Mohamed and [Mr. Warsame] and to explain why Mr. Warsame" sent money to Mr. Mohamed. I agree with the government that these statements are unnecessary to establish the strength of Mr. Mohamed and Mr. Warsame's relationship, as elsewhere Mr. Warsame testified at length on that exact topic, providing details about how long the two knew each other and what their friendship consisted of. The detail about Mr. Mohamed's dental problem is cumulative at best and distracting or prejudicial at worst. As for the "effect on the listener" argument, as in his responses to the government's earlier objections Mr. Mohamed has not explained why it is relevant to a material issue that Mr. Warsame sent Mr. Mohamed money for dental care. Mr. Mohamed also argues that the testimony should come in because "Mr. Warsame is permitted to testify about his present sense impression" of Mr. Mohamed's dental problems and financial condition. But the 803(1) exception to hearsay applies to the *declarant's* present sense impressions, not the listener's. I therefore disregard this argument as well.

- As for the later exchange in this section, in which Mr. Warsame explains what Mr. Mohamed told him about why he was expelled by the pirates, Mr. Mohamed argues that this is "not hearsay because" it "explain[s] Mr. Warsame's state of mind." I turn again to

my ruling on the government's twentieth objection, the reasoning of which applies here as well: the state of mind exception applies for statements that reveal Mr. Mohamed's state of mind, not Mr. Warsame's, and any "effect on the listener" argument Mr. Mohamed might intend is unavailing because there is no indication of what effect these statements had on Mr. Warsame or why they are relevant.

- I therefore sustain the objection and strike these lines.

**Government's Twenty-Third Objection**

*Said Osman Warsame, 94:19–94:24*

The government next objects to 94:19 to 94:24, where defense counsel asks and Mr. Warsame answers the question, "And isn't it true, Mr. [Warsame], that you aided him in writing the Facebook messages?" Though Mr. Mohamed argues that the government waived this objection by not providing the grounds during the deposition, I refer to my earlier statement discussing my approach to waiver issues and conclude that the basis for this objection would have been clear at the time, as it came directly after a leading question. Moving to the merits, I find that, unlike in other instances in which defense counsel asked leading questions, this question did not simply summarize prior testimony but instead advanced Mr. Warsame's testimony. And, as the government argues, framing the question in this way was not necessary to develop the testimony— defense counsel could instead have asked, for example, "Who helped him write the Facebook messages?" I therefore strike these lines.

**Government's Twenty-Fourth Objection**

*Said Osman Warsame, 96:15–96:19*

The government's twenty-fourth objection is to 96:15 to 96:19, where Mr. Warsame testified that he believed Mr. Mohamed was honest when he answered messages from Michael Moore. In the

government's view, this testimony is inadmissible under Rule 608, which generally prohibits witnesses from testifying on direct to someone's truthfulness on a specific occasion. Though Mr. Mohamed counters that this testimony "goes to Mr. Warsame's present sense impression" of how Mr. Mohamed was answering Michael Moore's messages, this argument appears to be based on a hearsay exception and is not responsive to the government's Rule 608 concerns. In any event, I am unaware of an exception to Rule 608 for the witness's "present sense impression" of whether someone is being truthful. Because these lines run afoul of Rule 608, I sustain the government's objection and strike them from the record.

### Government's Twenty-Fifth Objection

*Said Osman Warsame, 99:14–101:4*

The government's twenty-fifth objection is to 99:14 to 101:4.

- The first basis for the government's objection is hearsay: in this portion of the transcript, Mr. Warsame recounts a time when Mr. Mohamed told Mr. Warsame that the pirates were threatening him and Mr. Warsame's advice in response to what Mr. Mohamed said. As for Mr. Mohamed's statements to Mr. Warsame, I find that though they meet the definition of hearsay, they fall under Rule 803(2)'s exception for "statement[s] relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." The government argues that this exception is inapplicable because there is no indication in the record of how much time passed between the threats and Mr. Mohamed's statements to Mr. Warsame. But both the Advisory Committee Notes to Rule 803 and the Second Circuit have made clear that, though temporal proximity is *a* factor in determining whether this exception applies, "the standard of measurement is the duration of the state of excitement," Fed. R. Evid. 803 advisory committee's note; *Mohamed v. Laz Parking*, 79

F. App'x 482, 483 (2d Cir. 2003) ("While the length of time between the event and the utterance is a factor relevant to this determination, it is not singularly determinative. The critical inquiry is whether the declarant was still under the stress of excitement caused by the event or condition when she made the challenged statement." (citations omitted)); *see also United States v. Jones*, 299 F.3d 103, 112 (2d Cir. 2002) (describing length of time as "only one factor to be taken into account"); *United States v. Zuniga*, 767 F.3d 712, 717 (2d Cir. 2014) ("All that the exception requires is that the statement be made contemporaneously with the *excitement* resulting from the event."); *United States v. Steele*, 216 F. Supp. 3d 317, 322 (S.D.N.Y. 2016) ("Unlike a present-sense impression, an excited utterance need not be contemporaneous with the startling event to be admissible under Rule 803(2). Rather, the key question governing admission is whether the declarant was, within the meaning of Rule 803(2), under the stress of excitement caused by the event or condition." (citations, alterations, and quotation marks omitted). Here, though the absence of information about the length of time between the threats and Mr. Mohamed's statements gives me some pause, Mr. Warsame's testimony that Mr. Mohamed was "running," "rushing," and "shaking" when the two spoke satisfies me that Mr. Mohamed was still "under the stress of excitement." I therefore admit 99:14 to 100:16. However, I strike 100:21 to 101:4 because Mr. Warsame's statements to Mr. Mohamed are hearsay not within any exception or exclusion.

- I also strike 100:17 to 100:20, in which Mr. Warsame explains that he learned through an his "investigat[ion]" that the pirates were in fact threatening Mr. Mohamed. The government argues that Mr. Warsame does not have a proper foundation for this testimony, and I agree: there is nothing in the record indicating what this investigation consisted of,

who it involved, when it occurred, or any other basic details establishing how Mr. Warsame came to have personal knowledge of the threats. I therefore find these lines inadmissible under Rule 602.

- In sum, I admit 99:14 to 100:16 and strike 100:17 to 101:4.

## Government's Twenty-Sixth Objection

*Said Osman Warsame, 105:15–106:3*

Next is the government's twenty-sixth objection, concerning Mr. Warsame's testimony from 105:15 to 106:33 that he felt Mr. Mohamed's arrest by U.S. law enforcement was unfair. Though the government argues that Mr. Warsame was improperly testifying on an "ultimate issue," Rule 704 makes clear that, with some exceptions not applicable here, "[a]n opinion is not objectionable just because it embraces an ultimate issue." That said, I find that any relevance this testimony has is outweighed by its potential for prejudice or confusion. Though Mr. Mohamed argues that the testimony is relevant because it supports Mr. Warsame's account that Mr. Mohamed "was acting on behalf of Mr. Warsame in attempted aid" of Michael Moore, I agree with the government that, because most of Mr. Warsame's testimony supports this account, the relevance of these particular lines, which concern Mr. Warsame's feelings about actions by Michael Moore and law enforcement taken after the key events he witnessed, is minimal. On the other hand, the admission of Mr. Warsame's feelings on these subjects might prejudice the jury against other witnesses in the case or confuse the issues the jurors are meant to decide. I sustain the objection and strike these lines.

## Government's Twenty-Seventh Objection

*Said Osman Warsame, 152:1–12*

The government's twenty-seventh objection is to 152:1 to 152:12, where it claims defense counsel

asked impermissible leading questions and questions that had already been asked and answered.

- I agree with the government that the questions from 152:1 to 152:7 are leading. In response to the government's arguments, Mr. Mohamed contends that it waived this objection by not providing the grounds during the deposition. Referring to my earlier statement discussing my approach to waiver issues, I conclude that the basis for the government's objection would have been self-evident to defense counsel, as it came directly after a clearly leading question. Moving to the merits, though Mr. Mohamed argues that these questions and answers should be allowed because they "will be helpful to the jury," I do not see what value they will have to the jury and Mr. Mohamed does not elaborate. I therefore strike these lines.

- Defense counsel's question following these lines was: "And is it possible that you'd describe [Mr. Mohamed] as stupid when he did something stupid, but you don't really think he's a stupid person?" Unlike the others, this question is not leading. Though the government argues that the question and answer should be struck because Mr. Warsame had already answered the question, I disagree. In his earlier testimony, Mr. Warsame answered questions about whether he *remembered* calling Mr. Mohamed stupid and whether it was possible Mr. Warsame said Mr. Mohamed *did* something stupid—he never testified about whether it was possible he had called Mr. Mohamed stupid. Though I strain to see the value of this additional testimony to Mr. Mohamed, I cannot say that this question was asked and answered. I therefore admit 152:8 to 152:12.

**Government's Twenty-Eighth Objection**

*Said Osman Warsame, 157:12–21*

In its twenty-eighth objection, the government seeks to strike 157:12 to 157:21, arguing that defense counsel's questions had already been asked and answered. While defense counsel asked a near-identical version of the question "Did you see Mohamed Tahlil with Abdi Yusuf Hassan" just a few lines earlier, the transcript seems to suggest that Mr. Warsame gave a contradictory, potentially confusing answer, first saying, "Well not –" then, after being briefly interrupted by defense counsel, saying, "Yes. Yes." Because Mr. Warsame's answer to the previous iteration to the question was unclear, I am inclined to allow this testimony in. I am also guided by my understanding that the testimony is not particularly prejudicial to the government, since elsewhere in the transcript Mr. Warsame makes clear that he "never saw Mohamed Tahili Mohamed meet Abdi Yusuf Hassan," that Mr. Mohamed never worked for Mr. Hassan, and that he never saw the two men "physically next to each other, ever" (though the government also seeks to strike this last portion of testimony, I overrule its objection: the government did not object to defense counsel's question during the deposition and I do not find that it was already asked and answered). Accordingly, I admit these lines.

### Government's Twenty-Ninth Objection

*Said Osman Warsame, 167:19–168:5*

The government's twenty-ninth objection is to 167:19 to 168:5, in which defense counsel asks Mr. Warsame if he knew that Michael Moore had written a book and then asks a specific question about its contents. I sustain the government's objection. Though both government counsel and defense counsel asked questions about Michael Moore earlier in the deposition, neither party asked about his book or its contents. These questions were therefore beyond the scope of the previous questioning. Moreover, I find that they are an improper attempt to introduce the contents of the book, which have not been offered into evidence: though Mr. Warsame explains that he never read

the book, in her question to him defense counsel clearly suggests that its contents involve Michael Moore's account of whether "for the three months Mohamed Tahlil was with him, the pirates had settled anywhere for more than a day." I therefore strike these lines.

### Government's Thirtieth Objection

*Said Osman Warsame, 111:15–111:25*

The government next moves to strike 111:15 to 111:25 because defense counsel was interjecting its own questions during the government's cross examination. Mr. Mohamed does not respond, and I agree with the government's position. I therefore strike these lines, in addition to 112:1 to 112:3, which build on and reference them.

### Government's Thirty-First Objection

*Said Osman Warsame, 112:23–113:1*

The government's thirty-first objection is to 112:23 to 113:1, where it argues defense counsel improperly instructed Mr. Warsame during the government's cross examination. I agree: though Mr. Mohamed argues that defense counsel was "merely remind[ing] the witness to answer the question posed," interjecting during the government's cross was improper; if defense counsel wanted Mr. Warsame to clarify or elaborate on a topic raised during cross, the time for that was redirect. I therefore strike these lines.

### Government's Thirty-Second Objection

*Said Osman Warsame, 131:12–21*

The government's next objection, which concerns 131:12 to 131:21, is for the same reason as its previous one: that defense counsel improperly instructed Mr. Warsame. For the reasons I gave in my ruling on the thirty-first objection, I strike these lines as well.

### Government's Thirty-Third Objection

31

*Said Osman Warsame, 134:25–135:10*

The government's thirty-third objection is to 134:25 to 135:10, where it argues defense counsel was improperly instructing the witness as he answered the government's questions on cross examination. Again, I agree with the government that defense counsel's interjection in Mr. Warsame's answer and instruction to Mr. Warsame that "there is no question pending" is improper. I therefore sustain the government's objection and strike these lines.

**Government's Thirty-Fourth Objection**

*Said Osman Warsame, 113:25–114:7*

The government next objects to 113:25 to 114:7, where it argues defense counsel improperly attempted to "correct" the government's questions. In response, Mr. Mohamed argues that "[d]efense counsel properly objected to the mischaracterization of prior testimony by the government." While I agree that an objection to mischaracterization of prior testimony would have been appropriate, *see* Gov't Objections 7 & 14, the question defense counsel objected to was, "You saw the cars that Michael Scott Moore was traveling in, right?" This question did not purport to characterize or summarize Mr. Warsame's prior testimony, and defense counsel's objection on that basis was therefore improper. Moreover, the elaboration defense counsel went on to give about what she believed Mr. Warsame actually said on direct would be improper for the jury to see—if the objection had been raised live at trial, for example, I would have heard the parties' arguments in a side bar. I therefore sustain the objection and strike these lines.

**Government's Thirty-Fifth Objection**

*Said Osman Warsame, 116:16–20*

In the government's thirty-fifth objection, which is to 116:16 to 116:20, it raises the same argument that it does in its thirty-fourth: that defense counsel, in objecting to the government's purported

mischaracterization of Mr. Warsame's prior testimony, improperly added its own characterization of what it believed the prior testimony was. For the same reasons I articulated in my ruling on the thirty-fourth objection—both that the government did not purport to be characterizing prior testimony and that defense counsel improperly offered her own explanation of the prior testimony—I sustain this objection as to everything but the first word on these lines. I admit the word "Objection" on 116:16 and strike the rest.

### Government's Thirty-Sixth Objection

*Said Osman Warsame, 108:1–2; 112:8–17*

In its final objection regarding Mr. Warsame, the government notes that on 108:1 to 108:2 and 112:8 to 112:17 Mr. Warsame testified that defense counsel told him their earlier phone conversations were being recorded. Defense counsel in response represents that the conversations were not recorded, and the government in its reply requests that defense counsel "make clear to the Court whether counsel instructed [Mr. Warsame] that the meetings were being recorded." I order Mr. Mohamed's counsel to submit a letter offering the clarification the government has requested no later than seven business days after the entry of this order. Based on the contents of this letter, the government may offer further arguments regarding these lines of testimony.

### Government's Thirty-Seventh Objection

*Dahir Osman Hirsi, 30:17–32:13*

The government's thirty-seventh objection—its first in relation to Mr. Hirsi's testimony—is to 30:17 to 32:13 of his deposition transcript. The government argues that this portion of the transcript consists of hearsay and Mr. Hirsi's opinion on Mr. Mohamed's truthfulness on a particular occasion, which is inadmissible under Rule 608(a).

- I find that 30:17 to 31:7, in which Mr. Hirsi describes what Mr. Mohamed told him about his time with the pirates, are inadmissible as hearsay. Mr. Mohamed offers a number of arguments about why these out-of-court statements fall under an exception or exclusion, but none of them are convincing. First, he argues that "[t]here is no objectionable hearsay elicited as Mr. Hirsi" was merely answering a series of yes or no questions. I disagree: as the government points out, "there is no hearsay exception predicated on the structure of the question asked," and in this case Mr. Hirsi conveyed through his answers to the yes or no questions the substance of what Mr. Mohamed said to him. *Cf. United States v. Reyes*, 18 F.3d 65, 69 (2d Cir. 1994) (holding that certain testimony was hearsay because, "although the jury was not told exactly what words [the declarants] had spoken, [the witness'] testimony clearly conveyed the substance of what they had said"). Next, Mr. Mohamed argues that both the present sense impression and excited utterance exceptions to hearsay apply. But the present sense impression exception applies only for statements "describing or explaining an event or condition made while or immediately after the declarant perceived it," while the excited utterances exception applies for statements "relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." There is no indication here that, when Mr. Mohamed spoke to Mr. Hirsi, he was describing events occurring contemporaneously or near-contemporaneously—indeed, this seems unlikely, as he made the statements in Galkayo and apparently after he left the pirates, at least temporarily. Nor does it seem that Mr. Mohamed was still speaking about a "startling event" while still in an emotional state. Though Mr. Mohamed was apparently feeling stressed and under pressure after his time with the pirates, from the transcript it seems that the stress was endemic during this period of Mr. Mohamed's life and not in

response to one particular incident (such as the pirates threatening him, as in the twenty-fifth objection)—by the time Mr. Hirsi saw him, he had even lost weight. This is a far cry from the "excited" response to a specific "startling" event contemplated by Rule 803(2). Finally, Mr. Mohamed argues that these statements "show the jury Mr. Hirsi's state of mind." Mr. Mohamed seems to misunderstand Rule 803(3), which allows statements that show *the declarant's* state of mind, not the listener's (to the extent Mr. Mohamed is making an "effect on the listener" argument, I do not see how any reaction Mr. Hirsi may have had to these statements would have been relevant). But even assuming Mr. Mohamed meant to refer to his own state of mind, Rule 803(3) specifically excludes from its definition statements "of memory or belief to prove the fact remembered or believed." That is what Mr. Mohamed's statements in this section go to: not his present state of mind but what he "recount[ed]" of "his experience as an infiltrator with the pirates." I therefore strike these lines.

- I admit, however, 31:8 to 31:12 up to the word "pressure," in which Mr. Hirsi says that he "felt bad for [Mr. Mohamed] because he told [him] he was under a lot of pressure." Though Mr. Mohamed's subsequent explanation of *why* he was under pressure is inadmissible, *cf. United States v. Dixon*, 511 F. App'x 48, 53 (2d Cir. 2013) (holding that statements that conveyed not just the declarant's feeling but also a factual assertion as to the *reason* for that feeling were inadmissible); *see also United States v. Harwood*, 998 F.2d 91, 98 (2d Cir. 1993), his statement that, at the time he was speaking to Mr. Hirsi, he was under pressure can come in pursuant to Rule 803(3).

- I strike 31:12 starting with "They" up to 31:25 as hearsay for the same reasons discussed above.

- I admit 32:1 to 32:9, as these lines consist neither of hearsay nor of Mr. Hirsi's opinion about Mr. Mohamed's truthfulness, which are the two bases for the government's objection. Instead, in this section Mr. Hirsi is testifying about his personal experience with pirates—whose actions he is aware of as a member of the community, as explained in his earlier testimony.

Finally, I strike 32:10 to 32:13 under Rule 608. This rule generally prohibits witnesses from testifying on direct to someone's truthfulness on a specific occasion, which is precisely what Mr. Hirsi did in this portion of his testimony.

### Government's Thirty-Eighth Objection

*Dahir Osman Hirsi, 32:22–33:6*

The government next objects to 32:22 to 33:6, on the basis of hearsay and Rule 608. I sustain the objection.

- I find that 32:22 to 33:2 constitute inadmissible hearsay and strike these lines. Though Mr. Hirsi does not spell out directly how he learned that the pirates kicked Mr. Mohamed out, the only plausible explanation is that Mr. Mohamed told him: earlier on page 32 Mr. Hirsi explained that he did not have any direct interactions with pirates himself, and on page 33 his statement that Mr. Mohamed "seemed truthful" clearly indicates that Mr. Mohamed was the source of this information. Because these lines contain Mr. Mohamed's out-of-court statements offered for their truth, they are hearsay. Defense counsel argues that the government waived this objection by not specifying the grounds during the deposition. But as I explained in response to a number of Mr. Hassan's waiver arguments, in my 2020 opinion I made clear that hearsay would likely be an issue with large parts of the witness' testimony. *See Mohamed*, 2020 WL 1545522, at *6 ("Mr. Hirsi's testimony that Mr.

Mohamed told him that he was not trusted by the pirates and that they were monitoring him would be inadmissible hearsay."). Defense counsel was thus on notice that the government might object on the basis of hearsay; when the government did object following testimony that incorporated hearsay, the grounds of the objection would have been clear in context.

- As for 33:3 to 34:6, in these lines Mr. Hirsi testified to Mr. Mohamed's truthfulness on a particular occasion. I therefore strike this portion under Rule 608.

**Government's Thirty-Ninth Objection**

*Dahir Osman Hirsi, 33:23–35:5*

The government's thirty-ninth objection is to 33:23 to 35:5, in which Mr. Hirsi recounts Mr. Mohamed's feelings of embarrassment and shame at having to live with Mr. Hirsi. The government argues that this testimony is based on inadmissible hearsay and that defense counsel's concluding question—"Could you describe [the grief on Mr. Mohamed's face] for us?"—"improperly elicits the witness's opinion as to the defendant's truthfulness on a particular occasion."

- Beginning with the government's second argument, I do not see how defense counsel's final question, asking Mr. Hirsi to describe Mr. Mohamed's grief, elicits Mr. Hirsi's opinion on Mr. Mohamed's truthfulness. I therefore decline to strike any of the testimony at issue on the basis of 608(a).

- As for the hearsay argument, I first address Mr. Mohamed's contention that the government waived this objection by not providing the grounds during the deposition. Though defense counsel is correct that the government did not state the grounds, its first objection came immediately after defense counsel asked Mr. Hirsi whether he knew if Mr. Mohamed was

embarrassed to be living with him. While it is possible that Mr. Hirsi would have relied on his *observations* of Mr. Mohamed's demeanor, it is as possible if not more so that in order to answer the question he would have to testify to statements Mr. Mohamed made about being embarrassed—indeed, that is exactly what Mr. Hirsi went on to do. Considering the timing of the government's objection, I find that the objection was not waived because the basis would have been self-evident in context.

- Moving on to the merits, Mr. Hirsi's testimony in this section essentially consists of three different categories of statements: statements about how Mr. Mohamed felt based on what Mr. Mohamed told Mr. Hirsi at the time; statements about why Mr. Mohamed felt that way based on what Mr. Mohamed told Mr. Hirsi; and statements about how Mr. Hirsi believed Mr. Mohamed was feeling based on Mr. Hirsi's physical observations of Mr. Mohamed (though the government appears to deny that this third category is present, I direct it to 34:13 to 34:18 and 34:23 to 34:25). For this third category, there is no hearsay problem, as Mr. Hirsi was testifying about his own observations, not anything Mr. Mohamed said to him. I find that statements in the first category are also admissible: though they meet the definition of hearsay, they fall under Rule 803(3)'s exception for statements of the declarant's then-existing state of mind. The second category, however—the category for Mr. Hirsi's explanation of *why* Mr. Mohamed was embarrassed or ashamed—does not fall under Rule 803(3) for the reasons I articulated in my ruling on the government's twenty-seventh objection. I therefore strike these statements.

- Based on this analysis, I admit 33:23 to 34:6 through "felt ashamed"; I strike 34:6 starting at "He felt" to 34:8 ending at "he went out to do"; I admit 34:8 starting at "He just" through

34:21; I strike 34:22 to 34:23 through "problems"; and I admit the remainder of the objected-to testimony.

## Government's Fortieth Objection

*Dahir Osman Hirsi, 36:5–16*

The government's final objection is to 36:5 to 36:16, and it raises two grounds: that defense counsel asked an improper leading question and that the testimony is not relevant.

- I find that defense counsel's first question in this section—"Do you know Mohamed Tahlil Mohamed had a father that was alive when he was a young child?"—improperly led the witness. Though Mr. Mohamed is correct that this question is not phrased as a classic leading question, in it defense counsel improperly inserted a new fact into the record in the form of a question. I also do not accept that this question was necessary to develop the witness' testimony, as there were certainly ways defense counsel could have asked about this topic without leading Mr. Hirsi. I accordingly strike 36:5 to 36:11.

- However, I overrule the government's objection as to 36:12 to 36:16. After asking Mr. Hirsi how young Mr. Mohamed was when his father died, the government objected but did not provide a basis. Though it now argues that Mr. Hirsi's testimony on this subject is irrelevant, the government could easily have been mounting another leading question objection or a foundation objection (which, indeed, is an issue the government raises in its briefing for this objection). Because the grounds for the government's objection was not sufficiently self-evident at the time, I consider the objection waived and admit these lines.

## Mr. Hassan's First Objection

*Mohammad Nur Ali, 74:2–74:3*

Mr. Hassan's first objection is to a portion of the transcript from 74:2 to 74:3, in which government

counsel says, "I asked a yes or no questions [sic]" and the transcriber designates "Foreign language" following. Mr. Hassan asks me to strike these lines "because the transcript provides no translation of the [witness'] response." On my read of the transcript, however, there is no indication that Mr. Ali gave any response; rather, government counsel made his statement and the designation of "foreign language" presumably refers to the translation of that statement. I therefore overrule the objection and admit these lines.

### Mr. Hassan's Second Objection

*Mohammad Nur Ali, 77:7–77:25*

Mr. Hassan's next objection concerns the portion of the government's cross examination in which government counsel asks Mr. Ali which clan was responsible for Michael Moore's kidnapping and if he "knew the pirates." Mr. Hassan argues that the government's question "Well, you said you knew the pirates. Correct?" mischaracterizes Mr. Ali's prior testimony.

- I overrule this objection as to 77:7 to 77:13, as the government's question in those lines— "So, the Sa'ad clan was responsible for Michael Scott Moore's kidnapping. Correct?"— does not purport to characterize Mr. Ali's prior testimony and, in fact, is consistent with his statements that he knew who was responsible for the kidnapping.

- I sustain the objection, however, as to 77:14 to 77:25. In its question, the government indicates that Mr. Ali previously testified that he "knew the pirates." I do not read Mr. Ali's prior testimony that way. In my understanding, though Mr. Ali had at that point testified that he knew *of* the pirates who kidnapped Mr. Hassan, he had not testified that he personally knew them, which is what I interpret government counsel to be saying. Mr. Ali's response was therefore in response to an improper question. Though I do not believe the government intended to mischaracterize Mr. Ali's earlier testimony, I am inclined to err on

the side of caution in this instance, particularly in light of the language barrier in play. I

therefore strike 77:14 to 77:25.

## Mr. Hassan's Third Objection

*Mohammad Nur Ali, 86:19–87:3*

Mr. Hassan's third objection is to transcript lines 86:19 to 87:3, which he argues is based on

hearsay and speculation from Mr. Ali about what Mr. Hassan knew regarding Michael Moore's

release.

- I overrule this objection. Though it is not spelled out overtly in the transcript, when Mr.
  Ali says, "The way I believe, [Mr. Hassan] was not told, he was not informed" of when
  Michael Moore was released, the clear inference is that Mr. Ali's belief was based on what
  Mr. Hassan told him. I fail to see any other plausible basis for Mr. Ali's insight into the
  information Mr. Hassan had at the time, particularly given that, as Mr. Ali testified, he was
  in close contact with Mr. Hassan but was not in contact with the pirates who kidnapped
  Michael Moore. Mr. Ali's testimony is therefore based on hearsay, but it is the hearsay of
  a party opponent. I therefore admit the testimony under Rule 801(d)(2)(A).

## Mr. Hassan's Fourth Objection

*Mohammad Nur Ali, 88:11–88:20*

Mr. Hassan next objects to 88:11 to 88:20, where Mr. Ali provides an answer to a question

withdrawn by government counsel. The government does not respond to this objection, and I

therefore strike these lines of testimony.

## Mr. Hassan's Fifth Objection

*Mohammad Nur Ali, 88:21–89:6*

Finally, Mr. Hassan objects to transcript lines 88:21 to 89:6, in which Mr. Ali testifies that he did

not know beforehand that Mr. Hassan would be stepping down or who Mr. Hassan's successor would be. Mr. Hassan argues that the government "failed to lay a foundation" for this line of questioning.

- As an initial matter, I find the line of questioning proper: Mr. Ali had earlier testified that he was in close, frequent contact with Mr. Hassan and was aware of his daily activities; in light of this testimony, the government's questioning about whether Mr. Ali knew Mr. Hassan would be stepping down was reasonable.

- As for Mr. Ali's answers, in both answers at issue he claims that he *did not* know about Mr. Hassan stepping down or Mr. Hassan's successor. I do not see why or even how the government could be expected to lay a foundation for a witness' absence of knowledge. I accordingly admit this testimony.

SO ORDERED.

_____/s/_____

Allyne R. Ross
United States District Judge

Dated:        August 26, 2022
              Brooklyn, New York