UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-against-

MOHAMED TAHLIL MOHAMED,
   also known as "Tahlil Mohamed,"
"Mohamed Tahlil," "Maxamed Tahliil
Guure," "the Taliye" and "Mohamed the
Taliye," and

ABDI YUSUF HASSAN,

*Defendants*.

18-cr-603 (ARR)

NOT FOR ELECTRONIC
OR PRINT PUBLICATION

**OPINION & ORDER**

ROSS, United States District Judge:

    Defendants Mohamed Tahlil Mohamed and Abdi Yusuf Hassan are charged on seven counts: (1) conspiracy to provide material support for acts of terrorism, (2) provision and attempted provision of material support for acts of terrorism, (3) hostage-taking conspiracy, (4) hostage taking, (5) threatening a U.S. national with a weapon of mass destruction, (6) unlawful use of firearms, and (7) firearms conspiracy. On August 24, 2020, I issued a preliminary draft of the jury instructions and a corresponding opinion and order explaining my decisions regarding disputed instructions. Op. & Order ("Jury Instrs. Op."), ECF No. 88; Draft Jury Instrs., ECF No. 88-1. There remain two outstanding issues regarding the jury instructions, both of which are decided herein.

    The draft jury instructions include a *Pinkerton* liability charge for Counts Five and Six. In the corresponding opinion, I stated that "I cannot make a final determination about whether to include a *Pinkerton* charge before I review the evidence presented at trial," but "it is overwhelmingly likely that the jury instructions will include a *Pinkerton* charge." Jury Instrs. Op. 17. I also said I would set a briefing schedule for defendants' objections to the *Pinkerton* charges

closer to trial. On September 12, 2022, I invited briefing on the proposed *Pinkerton* charge. Dkt. Entry (Sept. 12, 2022). Separately, on September 15, 2022, the government filed a letter brief requesting a jury instruction regarding two inaccurate statements made by witness Said Osman Warsame during his Rule 15 deposition. Gov't Letter, ECF No. 151.

For the following reasons, I intend to instruct the jury on the *Pinkerton* charges as set forth in the draft instructions; the government's request for an instruction regarding Mr. Warsame's testimony is denied.

## I. *Pinkerton* Charge

Under *Pinkerton v. United States*, 328 U.S. 640 (1946), "a defendant who does not directly commit a substantive offense may nevertheless be liable if the commission of the offense by a co-conspirator in furtherance of the conspiracy was reasonably foreseeable to the defendant as a consequence of their criminal agreement." *United States v. Parkes*, 497 F.3d 220, 232 (2d Cir. 2007) (citation omitted). The Second Circuit has cautioned that a *Pinkerton* charge "should not be given as a matter of course." *United States v. Sperling*, 506 F.2d 1323, 1341 (2d Cir. 1974). In *Pinkerton*, "there was no evidence that [the defendant] had committed the substantive offense for which he had been convicted, but it was clear that the offense had been committed and that it had been committed in furtherance of an unlawful conspiracy of which he was a member." *Id.* at 1342. A *Pinkerton* charge may not be appropriate in the inverse situation, where there is "evidence of various substantive offenses," but the existence of a conspiracy "must be inferred largely from the series of criminal offenses committed." *Id.* In considering a *Pinkerton* theory of liability, a jury must conclude that a conspiracy existed, that the defendant knowingly participated in the conspiracy, that a substantive crime was committed by the defendant's coconspirators, and that the substantive crime was reasonably foreseeable to the defendant and in furtherance of the

conspiracy. *United States v. Graziano*, 616 F. Supp. 2d 350, 366 (E.D.N.Y. 2008). The draft jury instructions include a *Pinkerton* charge for Counts Five and Six, Draft Jury Instrs. 30–32, 41–42, that largely track the standard instruction in *Modern Federal Jury Instructions* § 19.03.

The government represents it will elicit testimony and present evidence at trial establishing (1) the existence of the hostage-taking conspiracy charged in Count Three, (2) the commission of the substantive offenses charged in Counts Five and Six by members of the conspiracy, and (3) that those substantive offenses were committed in furtherance of the conspiracy. Gov't Suppl. Br. Re: Pinkerton Jury Instrs. ("Gov't Br.") 3, ECF No. 171. Provided the government establishes these elements, a *Pinkerton* charge is appropriate on Counts Five and Six.

Defendants argue that the *Pinkerton* charges will cause the jury to engage in a reverse-*Pinkerton* analysis or present a risk of confusion. I disagree. Though the government likely will present evidence of the commission of the substantive offenses charged in the indictment, the government also says it will elicit testimony and present evidence that directly establishes the existence of the conspiracy. As a result, it seems unlikely that evidence of the substantive offenses will lead to an improper inference as to the existence of the charged conspiracy, making this case a far cry from *Sperling*, where the existence of the conspiracy itself had to be inferred from the evidence of substantive offenses. *Sperling*, 506 F.2d at 1342.

As to the risk of juror confusion, defendants are correct that this is a factually complex case. However, the potential risk of juror confusion seems far too remote to outweigh the interest in delivering an otherwise lawful and appropriate jury instruction. If the government presents evidence establishing the existence of the conspiracy and the commission of the substantive offenses charged in Counts Five and Six by members of the conspiracy in furtherance of the conspiracy, then the *Pinkerton* charge will largely require the jury to decide the final two elements:

whether defendants were members of the conspiracy at the time the substantive crime was committed and whether defendants could have reasonably foreseen that the substantive crime might be committed by their coconspirators. Draft Jury Instrs. 30–32, 41–42. As the government points out, "those are the principal issues [the jury] will be asked to decide in this case." Gov't Br. 9. And Mr. Hassan's concerns about the *Pinkerton* charge allowing the jury to convict him based on substantive crimes that occurred before his alleged entry into the conspiracy should be allayed by the instruction itself, which makes it clear that the defendant must have been a member of the conspiracy "at the time that the substantive offense . . . was committed." Draft Jury Instrs. 31, 42. Barring an unforeseen development at trial, I will give an instruction on *Pinkerton* liability as to Counts Five and Six.

    Defendants make two additional arguments regarding the language used in the proposed *Pinkerton* instructions. First, defendants ask me to instruct the jury that the substantive offense at issue was within the scope and in furtherance of the conspiracy as "understood" by the defendant. Defs.' Suppl. Br. Re: Jury Instrs. ("Defs.' Br.") 12, ECF No. 164. I reject the additional language as unnecessary. The draft *Pinkerton* charges say the jury must find that the substantive offense was "committed pursuant to the common plan and understanding" that existed among the conspirators and must have been "reasonably foreseen" by defendants. These elements mitigate any risk of the jury finding defendants liable for substantive conduct beyond the scope of the conspiracy as understood by the conspirators.

    Second, defendants argue that I should include language instructing the jury that an offense is "reasonably foreseeable only if it is a necessary or natural consequence of the unlawful agreement." Defs.' Br. 14. Defendants' argument finds support in case law; *Pinkerton* itself instructs that liability does not attach to a substantive offense that "was merely a part of the

4

ramifications of the plan which could not be reasonably foreseen as a necessary or natural consequence of the unlawful agreement." *Pinkerton*, 328 U.S. at 648. And the Second Circuit has explained that "[a]n offense by a co-conspirator is deemed to be reasonably foreseeable if it is 'a necessary or natural consequence of the unlawful agreement.'" *United States v. Parkes*, 497 F.3d 220, 232 (2d Cir. 2007) (quoting *Pinkerton*, 328 U.S. at 648). However, the government is also correct that this language "is not an essential component" of the *Pinkerton* charge. Gov't Br. 12. Courts in this Circuit have defined a "reasonably foreseeable" offense as "a necessary or natural consequence" of the conspiracy, but all have done so only in considering sufficiency of the evidence. *Parkes*, 497 F.3d at 232; *United States v. Molina*, 581 F.2d 56, 61 (2d Cir. 1978); *Graziano*, 616 F. Supp. 2d at 373.

Though I view this as a close call, I decline to adopt defendants' proposed changes. The draft *Pinkerton* charges instruct the jury to consider whether "the defendant reasonably could have foreseen that one or more of his coconspirators might" commit the substantive offense charged in Counts Five and Six. Draft Jury Instrs. 34, 42. If I incorporated defendants' revisions, the charge would likely instruct the jury to consider whether the substantive offense "was reasonably foreseeable as a necessary or natural consequence" of the charged conspiracy. I view these instructions as imposing essentially the same requirement—there is little daylight between a "reasonably foreseeable . . . natural consequence" of a conspiracy and a consequence that one reasonably could have foreseen might result from a conspiracy. The *Pinkerton* charge as currently drafted has long been approved in this Circuit, *see, e.g.*, *United States v. Salameh*, 152 F.3d 88, 149 (2d Cir. 1998), and I will deliver it accordingly.

## II. Warsame Instruction

The parties conducted depositions of three individuals in Somalia pursuant to Federal Rule of Criminal Procedure 15. One of Mr. Mohamed's witnesses, Said Osman Warsame, testified on direct and cross-examination that defense counsel told him their phone conversations were being recorded. The government moved to strike Warsame's testimony under Federal Rule of Criminal Procedure 26.2(e) if in fact the calls were recorded and not produced to the government. On August 26, 2022, I ordered Mr. Mohamed's counsel to clarify whether those conversations were recorded. Op. & Order 33, ECF No. 146. Mr. Mohamed's counsel confirmed that the calls were not recorded. Mohamed Counsel Letter, ECF No. 147.

In response, the government requested that the following instruction be read to the jury following admission of Mr. Warsame's testimony:

> You have heard testimony on two occasions from Mr. Warsame that defense counsel told him that his phone conversations with them were being recorded and that they were in fact recorded. Defense counsel has represented that they did not record any conversations with Mr. Warsame and that they did not tell him that the phone conversations were being recorded. You may consider defense counsel's representation that this testimony was untrue in assessing the credibility of Mr. Warsame's testimony, and I will give you further instructions regarding your consideration of the credibility of witnesses at the end of the case. I remind you that you alone are the sole judges of the facts in this case, including whether or not to believe any particular witness.

Gov't Letter 2, ECF No. 151. The government argues that the instruction "would reflect defense counsel's position and provide the jury with appropriate context for the inaccuracy of Warsame's statements." *Id.* at 3. Mr. Mohamed's counsel objects to the government's request. Mohamed Opp'n Letter, ECF No. 152.

The government's request is denied. "Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608(b). On cross-

6

examination to impeach a witness "by proof of specific acts of misconduct not the subject of a conviction, the examiner must be content with the answer. The examiner may not, over objection, produce independent proof to show the falsity of such answer." *United States v. Masino*, 275 F.2d 129, 133 (2d Cir. 1960).

If Mr. Warsame testified at trial that the phone calls were recorded and maintained his answer on cross-examination, I would not admit extrinsic evidence relating to the phone calls to show Mr. Warsame's character for truthfulness in general or to show that his answer on cross-examination was false. I see no reason to do anything differently in the context of a Rule 15 deposition. The government cites one legal authority in support of its proposed instruction, *United States v. Spivack*, 376 F. App'x 144 (2d Cir. 2010), but that case is inapposite. It is one thing to issue a curative instruction to mitigate the impact of a prosecutor's "severe misconduct" eliciting "outrageous" false testimony from a witness, *id.* at 145; it is another to issue a curative instruction regarding a Rule 15 deposition where an inaccurate answer on a collateral matter was revealed due to a request to strike testimony under Federal Rule of Criminal Procedure 26.2(e). The government cross-examined Mr. Warsame during the deposition and he maintained that he was told the phone calls were recorded. Because the subject of questioning was not a criminal conviction, the government must take the answer. *Masino*, 275 F.2d at 133.

## CONCLUSION

For the foregoing reasons, I intend to issue a *Pinkerton* charge as to Counts Five and Six. The government's request for an instruction regarding Mr. Warsame's testimony is denied.

SO ORDERED.

                                                                                                 /s/
                                                  Allyne R. Ross
                                                  United States District Judge

Dated:       October 28, 2022
               Brooklyn, New York