UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-against-<br><br>MOHAMED TAHLIL MOHAMED,<br>  also known as "Tahlil Mohamed,"<br>  "Mohamed Tahlil," "Maxamed Tahliil<br>  Guure," "the Taliye" and "Mohamed the<br>  Taliye," and<br><br>ABDI YUSUF HASSAN,<br><br>                    *Defendants*. | 18-cr-603 (ARR)<br><br>NOT FOR ELECTRONIC<br>OR PRINT PUBLICATION<br><br>**OPINION & ORDER** |

ROSS, United States District Judge:

Defendant Abdi Yusuf Hassan has been charged with several offenses related to the hostage-taking of American journalist Michael Scott Moore in Somalia. Mr. Hassan currently intends to call at trial one expert witness, Dr. Nancy Franklin, and three fact witnesses, Bertrand Monnet, Ahmed Abdisalam, and Sharmake Ladane. Gov't Mot. in Lim. 1 ("Gov't Mot."), ECF No. 189; Def.'s Resp. in Opp'n 1 (Hassan Resp.), ECF No. 190. The government has filed a motion in limine seeking to preclude testimony from Mr. Hassan's three fact witnesses. *See* Gov't Mot. For the following reasons, I grant the motion in part and deny it in part.

## LEGAL STANDARD

The purpose of an in limine motion is "to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). At this preliminary stage, evidence should be excluded only when it is "clearly inadmissible on all potential grounds." *United States v. Dominique-McClain*, 21-CR-576 (KAM), 2022 WL 3682269 (E.D.N.Y. Aug. 25, 2022) (quotation omitted).

"The right to call witnesses in order to present a meaningful defense at a criminal trial is a fundamental constitutional right . . . ." *Washington v. Schriver*, 255 F.3d 45, 56 (2d Cir. 2001). "The right is not, of course, unlimited," and witness testimony may properly be limited by, *inter alia*, the Federal Rules of Evidence. *Id.* Under the federal rules, evidence is "relevant" if it "has any tendency to make a fact more or less probable than it would be without the evidence" and "is of consequence in determining the action," Fed. R. Evid. 401, and relevant evidence is admissible "unless an exception applies," *United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012). One such exception is contained in Rule 403, under which "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Another exception is the rule against hearsay, which instructs that any statement "the declarant does not make while testifying at the current trial or hearing" and that is offered in evidence "to prove the truth of the matter asserted in the statement," is generally not admissible at trial. Fed. R. Evid. 801(c), 802. Finally, any lay witness testimony must be supported by "a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602.

## DISCUSSION

### I. Bertrand Monnet

Bertrand Monnet is a French academic who interviewed and filmed Mr. Hassan in 2014 for a documentary on piracy in Somalia. Hassan Resp. 3. The government moves to preclude Professor Monnet's testimony because it expects that his testimony will constitute inadmissible

hearsay, lack foundation, or will seek to establish Mr. Hassan's innocence through proof of the absence of criminal acts on a specific occasion. Gov't Mot. 4.[1]

Mr. Hassan suggests that Professor Monnet will testify on three general subjects: (1) that Mr. Hassan said in an on-the-record interview with Processor Monnet that he and his government oppose piracy and that piracy harms Somalia; (2) that Mr. Hassan provided government security to Professor Monnet when he travelled to Hobyo as part of his research and filming, and that he "would not have been able to travel to Hobyo or Galkayo" as a foreign documentary filmmaker without this protection; and (3) that when Professor Monnet witnessed the release of three Kenyan hostages, Mr. Hassan was "in close proximity to the released hostages and then [was] later present in the same room in which the released hostages were interviewed by Professor Monnet." Hassan Resp. 3–4.

Professor Monnet's testimony that "Mr. Hassan went on record . . . setting forth his anti-piracy stance and the deleterious effects it had from a local and international standpoint" may be "relevant to the rebut the Government's theory of the case and the testimony of Government witnesses . . . as to Mr. Hassan's alleged open and visible affiliation with the pirates" who kidnapped Mr. Moore. Hassan Resp. 3. But such testimony would constitute inadmissible hearsay. In ruling on the admissibility of certain portions of depositions taken pursuant to Federal Rule of Criminal Procedure 15, I have already delineated certain boundaries of acceptable testimony in this case. *See United States v. Mohamed*, 18-CR-603 (ARR), 2022 WL 3703200 (E.D.N.Y. Aug. 26, 2020). In that opinion, I precluded hearsay testimony about Mr. Hassan's purported anti-piracy

---

[1] Because Mr. Hassan clarifies that Professor Monnet is offered only as a fact witness, *see* Hassan Resp. 1 n.1, I do not address the government's arguments regarding potential character witness testimony, *see* Gov't Mot. 5.

3

views. *See id.* at *3. I see no reason why my approach should be any different as to Professor Monnet's anticipated testimony.

As to testimony about Mr. Hassan's provision of government security for Professor Monnet and involvement in the release of three Kenyan hostages, I am not convinced that such testimony is relevant to a material fact in this case. Mr. Hassan has not demonstrated that the documentary film focused on the "inner workings" of his alleged coconspirators, as opposed to other groups of pirates or piracy in general. And testimony that Mr. Hassan was not involved in piracy at certain times is not inconsistent with allegations that he was involved in piracy at other times. Finally, "[a] defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions." *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990). Absent a showing that Mr. Hassan's purported assistance to Professor Monnet put him at cross-purposes with his alleged coconspirators, I will preclude Professor Monnet's testimony.

## II. Ahmed Abdisalam

Ahmed Abdisalam is the Executive Director of Horncenter, a think-tank based in Mogadishu, and a former Somali government official. Hassan Resp. 4. The government expects Mr. Abdisalam to testify to Mr. Hassan's "purported opposition to pirates" and moves to preclude this testimony as lacking in foundation or as inadmissible hearsay. Gov't Mot. 5. The government also argues that Mr. Abdisalam's testimony would be irrelevant because he only met Mr. Hassan in late 2014—after the release of Mr. Moore.

Mr. Hassan acknowledges that the men met in late 2014 but argues that "Mr. Abdisalam's proposed testimony . . . is temporally relevant as to Mr. Hassan's conduct in the immediate aftermath of Mr. Moore's release." Hassan Resp. 4. Specifically, Mr. Hassan argues that Mr. Abdisalam's testimony would address anticipated government witness testimony that Mr. Moore's

4

captors fought over the ransom money and that Mr. Hassan received a ransom payout. *Id.* at 4–5. By testifying that the two men traveled and campaigned together in Adado and Galkayo, Mr. Hassan urges that Mr. Abdisalam would address allegations that Mr. Hassan was "driving around with known pirates to the consternation of elders who opposed piracy." Hassan Resp. 5.

The government concedes that "[t]here may be some limited relevance to Abdisalam's testimony regarding his interactions with Hassan in Adado" and does not object to Mr. Abdisalam's testimony to the extent it is offered to rebut testimony that Mr. Hassan was observed with hostage-taking coconspirators at an Adado campaign event. Gov't Mot. in Lim. Reply 4 ("Gov't Reply"), ECF No. 191. The government maintains, however, that any testimony as to campaigning in Galkayo is irrelevant and inadmissible and that Mr. Abdisalam should not be permitted to "bootstrap testimony regarding the sentiments of third parties." *Id.*

For the same reasons explained above, I will not permit hearsay testimony by Mr. Abdisalam as to Mr. Hassan's purported opposition to piracy. However, I will permit the anticipated testimony regarding Mr. Hassan's campaign activities in Adado. I will also permit testimony that rebuts accusations that Mr. Hassan received ransom money as part of the charged conspiracy, so long as it is supported by personal knowledge and is not hearsay. This may include Mr. Abdisalam's proposed testimony that "had any such accusation been lodged against Mr. Hassan, [Mr. Abdisalam] would have never worked with him as it would have damaged his campaign." Hassan Resp. 5. And if the testimony establishes that the clan elders at the campaign event in Galkayo were the same elders who expressed "consternation" at Mr. Hassan's alleged open association with known pirates, I will allow testimony that there was no animosity between the elders and Mr. Hassan. But if the testimony establishes that the elders at the campaign event

5

were not the same ones who opposed piracy, then I anticipate precluding the testimony as irrelevant.

### III. Sharmake Ladane

Sharmake Ladane is an individual who was present in Mogadishu in 2014. The government moves to preclude testimony from Mr. Ladane that Mr. Hassan was committed to aiding Somalia and freeing hostages, arguing that such testimony would be inadmissible, self-serving hearsay. Gov't Mot. 6. Mr. Hassan responds that he does not seek to elicit testimony from Mr. Ladane as to Hassan's purported efforts to free hostages. Hassan Resp. 6. Rather, Mr. Hassan clarifies that "Mr. Ladane would testify that Mr. Hassan was present in Mogadishu in April 2014" when Mr. Hassan opened a restaurant in Mogadishu, which is relevant because the government will allege that Mr. Hassan was in Galkayo, hundreds of miles from Mogadishu, in April 2014. *Id.*

The government concedes that Mr. Ladane's testimony "may be relevant at trial to the extent it sheds light on Hassan's location during" April 2014. Gov't Reply 4. The government maintains, however, that Mr. Ladane should not be allowed to testify that Mr. Hassan was committed to aiding Somalia—a claim that the government sees as another way of showing that Mr. Hassan was "publicly against piracy." Gov't Reply 4; Hassan Resp. 6. I will permit Mr. Ladane's testimony regarding Mr. Hassan's location in April 2014, which is clearly relevant and admissible. As to the testimony that Mr. Hassan "wanted to do whatever he could to aid [Somalia]," Hassan Resp. 6, I will not permit such testimony unless Mr. Hassan proffers that such testimony is relevant and admissible for a non-hearsay purpose or under a hearsay exception.

## CONCLUSION

In sum, I will preclude Professor Monnet's proffered testimony. Messrs. Abdisalam and Ladane, on the other hand, may testify as to the admissible topics described above and any other

topics consistent with this decision and my earlier opinion on the permissible scope of the Rule 15 depositions.

I recognize that the arguments regarding Mr. Hassan's witnesses are based on predictions and extrapolations from witness interview notes. As a result, my rulings on this motion are preliminary and "subject to change when the case unfolds, particularly if the actual testimony differs" from the anticipated testimony. *Luce*, 469 U.S. at 41. To the extent a more detailed explanation of anticipated testimony would clarify any grounds for admissibility, I instruct Mr. Hassan to submit a proffer by 9:00 am on January 20, 2023. I also instruct defense counsel for both Mr. Hassan and Mohammed Tahlil Mohamed to provide the government with a list of anticipated trial exhibits on or before the same date and time. *See* Gov't Reply 2 n.1.

SO ORDERED.

                                                    /s/
                                                Allyne R. Ross
                                                United States District Judge

Dated:        January 19, 2023
                 Brooklyn, New York