UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

-against-

MOHAMED TAHLIL MOHAMED,
  also known as "Tahlil Mohamed,"
  "Mohamed Tahlil," "Maxamed Tahliil
  Guure," "the Taliye" and "Mohamed the
  Taliye," and

ABDI YUSUF HASSAN,

                *Defendants*.

18-cr-603 (ARR)

NOT FOR ELECTRONIC
OR PRINT PUBLICATION

**OPINION & ORDER**

---

ROSS, United States District Judge:

       Defendants Mohamed Tahlil Mohamed and Abdi Yusuf Hassan are currently on trial for several offenses related to their alleged involvement in the hostage-taking of American journalist Michael Scott Moore in Somalia. The defense case will commence on February 17, 2023. In this opinion, I address two outstanding issues regarding the defendants' presentation of evidence: (1) whether certain interview notes recorded by Assistant U.S. Attorney ("AUSA") David Denton constitute prior inconsistent statements of government witness Mohamed Ibrahim Khaire; and (2) the permissible scope of testimony by James Smith, an expert on Somalia called by Mr. Mohamed. For the following reasons, I conclude that the relevant notes are not prior inconsistent statements of Mr. Khaire, and I will allow most but not all of the testimony outlined in Mr. Smith's expert disclosure. Thus, Mr. Mohamed's letter motion is denied, and the government's motion in limine is granted in part and denied in part.

I.    **Prior Inconsistent Statements**

Earlier this week, Mr. Mohamed filed a motion seeking a ruling that certain notes made by AUSA Denton in two meetings with government witness Mohamed Ibrahim Khaire constitute prior inconsistent statements under Federal Rule of Evidence 613. Letter Mot., ECF No. 237. Mr. Mohamed then filed a supplemental letter motion further explaining the basis of his request and clarifying that he seeks either a stipulation by the government that Mr. Khaire made the relevant inconsistent statements, or a ruling permitting the defense to call AUSA Denton as a witness and introduce the relevant notes under Federal Rule of Evidence 803(5). Suppl. Letter Mot., ECF No. 240. Mr. Hassan joins the motion. *See* Tr. 1427:8–11. The government insists that the meetings notes are inadmissible and that the defense may not call AUSA Denton as a witness. Gov't Resp., ECF No. 247.

Defendants seek to impeach Mr. Khaire with notes AUSA Denton took at two 2019 proffer meetings in Djibouti. The notes state, *inter alia*, that Khaire "was on Naham III" and "[w]as chewing khat on the boat for a few days, went several times," 3508-69, at 3, and provide other details consistent with Khaire being on or around the Naham III, *see id.*—in direct contradiction to Khaire's testimony that he never boarded the ship. *See also* Letter Mot. 4 (listing purportedly inconsistent statements). Unfortunately, none of the participants at the meetings, including the witness, two AUSAs, and two FBI special agents, can recall whether Mr. Khaire made the statements recorded in the notes. Gov't Resp. 1.

I find that admission of the notes is precluded by binding precedent. According to the Second Circuit, "a third party's characterization of a witness's statement does not constitute a prior statement of that witness unless the witness has subscribed to that characterization." *United States v. Almonte*, 956 F.2d 27, 29 (2d Cir. 1992) (quotation omitted). Mr. Mohamed argues that the

2

relevant notes "are not characterizations or subjective impressions" because they relate facts that must have been told to the prosecutors by the witness. Suppl. Letter Mot. 4. But the *Almonte* court describes any third-party notes as a characterization, saying: "in the absence of endorsement by the witness, a third party's notes of a witness's statement may not be admitted as a prior inconsistent statement unless they are a verbatim transcript of the witness's own words." *Almonte*, 956 F.2d at 29. This may not be the best or fairest rule (query how often a witness will subscribe to his own prior inconsistent statement), but it is the rule.

And while I am sympathetic to Mr. Mohamed's argument, the government's account of the meetings sows significant doubt as to whether the notes were accurately recording the witness's statements. Though I would not expect a government prosecutor to mischaracterize a witness's statement in his notes (unintentionally or otherwise), the government was apparently working with an interpreter who "performed extremely poorly," Gov't Resp. 5 n.5, and at least one of the recorded statements at issue appears to conflate two different issues Mr. Khaire testified about at trial, Gov't Resp. 8. Given these circumstances and the law of the Circuit, I find that the proffer notes are inadmissible as impeachment material under Rule 613. And given the concerns about the accuracy of the notes and AUSA Denton's inability to recall whether Mr. Khaire in fact made the relevant statements, I also do not think it is appropriate to disqualify AUSA Denton from representing the government so he can be called as a defense witness. *See* Fed. R. Evid. 803(5)(C) (requiring that recorded recollections "accurately reflect[] the witness's knowledge).

## II. Scope of Expert Testimony

On January 26, 2023, the government filed a motion in limine seeking further expert witness disclosures regarding Mr. Mohamed's proposed expert witness on Somalia, James Smith, and seeking to preclude certain areas of his testimony. Gov't Mot. in Lim., ECF No. 207. The

3

government argued that the defense's expert disclosures were inadequate under the recently amended Federal Rule of Criminal Procedure 16 and asked that I require the defense to "supplement its expert notice and further disclose Smith's particular opinions, their bases, methodologies used, and the expert's relevant qualifications." Gov't Mot. in Lim. 5. At the final pretrial conference I set a deadline for a supplemental expert disclosure, which was filed on January 31, 2023. Second Suppl. Expert Disclosure ("Expert Disclosure"), ECF No. 216. The government has not suggested that the new disclosures fail to comply with Rule 16(b)(1)(iii), nor does the government challenge Mr. Smith's qualifications as an expert, so I will address only the contention that I should preclude certain areas of Mr. Smith's testimony as irrelevant.

The government argues that I should prevent Mr. Smith from testifying on the following topics: (1) that life in Somalia in 2012–2014 was different from life in the United States; (2) how firearms were purchased in Somalia in 2012–2014; and (3) the history of kidnappings in Somalia, the prevalence of al-Shabaab in Somalia, and the involvement of al-Shabaab in kidnappings in Somalia. Gov't Mot. in Lim. 5. The supplemental expert disclosure clarifies that Mr. Smith will not testify on the general topic of what life was like in Somalia and how it differed from life in the United States. *See generally* Expert Disclosure. At trial, the government reiterated its objection to Mr. Smith's anticipated testimony about "the legality of firearms in Somalia during that time period, Somalia's history of unrelated kidnappings and a variety of matters related to al-Shabaab." Tr. 1109:9–11.

The expert disclosure states that Mr. Smith will, among other things, testify about kidnappings committed in the Galmudug region of Somalia from 2012–2014, including that kidnappings were "an outgrowth of the collapse of the Somalia state in 1991, after the fall of the government of then President Siad Barre," the kidnappings "constituted a veritable industry"

4

centered around Hobyo, and that al-Shabaab "actively conducted kidnappings in Somalia from 2012 to 2014," typically "to create political propaganda" but occasionally working with "pirate networks involved in kidnapping for ransom." Expert Disclosure 3–4. Mr. Smith will also testify to the interrelationship between piracy organizations, al-Shabaab, and clans in the Galmudug region of Somalia from 2012–2014, including that al-Shabaab and pirate groups "held significant authority in their respective regions of Galmudug from 2012 to 2014," that "clan identity retained significance both inside and outside of those respective organizations," and that "clans often pressured government authorities to release captured Al-Shabaab members belonging to their respective clans." *Id.* at 4. Finally, Mr. Smith will testify about the availability of firearms in the Galmudug region of Somalia from 2012–2014, including that "[f]irearms were widely available for sale in the [Galmudug] region of Somalia from 2012 to 2014," that the domestic firearms market in Somalia was fueled in part by "security forces who absconded with weapons after training and shipments of weapons from countries including Yemen and Iran," that the Galmudug government "did not require the registration of firearms and imposed zero enforcement on the prohibition of firearm ownership," and that firearms were sold in markets "without any government oversight or restriction." *Id.* at 5.

      An expert may testify at trial if, among other requirements, "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Expert testimony must, of course, also be relevant. Fed. R. Evid. 401, 402. Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and "is of consequence in determining the action." Fed. R. Evid. 401.

I will preclude Mr. Smith's testimony on the legality of firearms in Galmudug in 2012–2014, an irrelevant subject that Mr. Mohamed's counsel conceded "[w]e don't need." Tr. 1111:2. But I see no reason not to allow the rest of the testimony about the proliferation of firearms in Galmudug and the lack of government enforcement or oversight. I will also allow testimony on al-Shabaab's involvement in kidnappings and relationship to pirate groups in 2012–2014, a topic that is relevant given testimony about threats to sell Mr. Moore to al-Shabaab. *See* Gov't Mot. 7. I will also allow testimony regarding the importance of clan identity in al-Shabaab and pirate organizations, a topic related to Mr. Smith's proposed testimony on the clan structure of the Galmudug region, testimony to which the government does not object. Finally, I will allow limited testimony on the history of kidnappings in the Galmudug region if it provides useful background or context, but I will not allow Mr. Smith to testify as to other specific, unrelated kidnappings in the region.

## CONCLUSION

For the foregoing reasons, Mr. Mohamed's letter motion is denied, and the government's motion in limine is granted in part and denied in part.

SO ORDERED.

/s/
Allyne R. Ross
United States District Judge

Dated:      February 16, 2023
            Brooklyn, New York