UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

-against-

MOHAMED TAHLIL MOHAMED,
    also known as "Tahlil Mohamed,"
"Mohamed Tahlil," "Maxamed Tahliil
Guure," "the Taliye" and "Mohamed the
Taliye," and

ABDI YUSUF HASSAN,

                *Defendants.*

18-cr-603 (ARR)

NOT FOR ELECTRONIC
OR PRINT PUBLICATION

**OPINION & ORDER**

---

ROSS, United States District Judge:

    Defendants Mohamed Tahlil Mohamed and Abdi Yusuf Hassan are currently on trial for several offenses related to their alleged involvement in the hostage-taking of American journalist Michael Scott Moore in Somalia. This opinion addresses three issues that have arisen since the government rested on February 15, 2023: (1) changes to the jury charge proposed at the February 17, 2023 charge conference; (2) the government's motion in limine regarding the testimony of Mr. Hassan's expert witness, Dr. Nancy Franklin; and (3) Mr. Hassan's Rule 29 motion.

    For the following reasons, I accept in part and reject in part the requested modifications to the jury charge; I grant in part and deny in part the government's motion in limine; and I deny Mr. Hassan's Rule 29 motion.

    **I.**    **Jury Charge**

    The principal disputes at the charge conference were Mr. Hassan's request for instructions on "interest in outcome" and "accomplices called by the government" and the government's request for an addition to the instruction on Count Two. Following the conference, both parties

filed letters elaborating their positions, *see* Letter on Accomplice Instruction ("Hassan Letter"), ECF No. 250; Letter Resp. ("Gov't Letter"), ECF No. 253, and Mr. Mohamed filed a letter opposing the government's request and taking no position on Mr. Hassan's proposal, *see* Letter Opposing Amendments ("Mohamed Letter"), ECF No. 252. Following the conference, I also reconsidered my position on the merits of a false exculpatory statement instruction, as explained below.

Mr. Hassan's request for an "interest in outcome" instruction is denied. Mr. Hassan asks for this instruction because government witnesses Mohamed Ibrahim Khaire and Roble Abdul Tahlil "have both been paid hundreds of thousands of dollars for their information and have been relocated with their families to the United States at Government continued expense." Hassan Letter 3. Though both Khaire and Tahlil testified that they have received financial compensation for their work as confidential informants, neither testified to having a financial stake in the *outcome* of defendants' trial. *See* Tr. 837:18–25; *id.* 1419:5–9. In any event, the jury charge on witness credibility already instructs the jury to consider whether a witness has "any possible interest in the outcome of the case." Draft Jury Instructions 7, ECF No. 88-1. I see no reason to expand the instruction.

Mr. Hassan's request for an "accomplice testimony" instruction is granted with modifications. I have added the following language to the jury charge immediately after the "confidential sources" instruction:

> Defendant Abdi Yusuf Hassan maintains that both government witnesses Mohamed Khaire and Roble Abdul Tahlil were accomplices in the captivity of Michael Scott Moore. The government maintains that they were not accomplices and were instead providing information to the government as paid confidential informants. Accomplice testimony, like confidential source testimony, is of such nature that it must be scrutinized with great care and viewed with particular caution when you decide how much of that testimony to believe. As I have already told you, you are the sole judges of the credibility of the witnesses who testified in this

case, and it is up to you, after reviewing all of the evidence, whether to accept some or all of the testimony of a witness, and to give it whatever weight, if any, it deserves.

The government does not oppose a version of this instruction that explicitly outlines Mr. Hassan's theory that Khaire and Roble were accomplices in the kidnapping of Mr. Moore, and I have largely used the language proposed by the government. *See* Gov't Letter 2. However, because the purpose of this instruction is to alert the jury that they should apply heightened scrutiny to accomplice testimony, I have inserted the third paragraph of Mr. Hassan's proposed instruction, which is adopted from Modern Federal Jury Instructions 7-5, *see* Hassan Letter 4, as the third sentence of the above instruction.

The government's request for an addition to the Count Two instruction is granted. Count Two charges defendants with providing material support for acts of terrorism under 18 U.S.C. § 2339A. I previously rejected a request by the government to add additional language to my instruction on Count Two; the government has since revised its proposed language and now asks that I add the following language to the instruction:

> This element requires you to find only that the defendant have either knowledge or intent that the material support or resources would be used by someone else in preparing for or in carrying out the crimes of taking hostage a national of the United States or threatening to use a weapon of mass destruction against a national of the United States. It does not require that those predicate crimes—taking hostage a national of the United States or threatening to use a weapon of mass destruction against a national of the United States—have actually been committed or that the defendant had the specific intention to commit, or the intention to aid or encourage, taking hostage a national of the United States or threatening to use a weapon of mass destruction against a national of the United States.

Though this language remains similar to the language I previously rejected as potentially confusing, *see* Op. & Order 19 ("Jury Charge Op."), ECF No. 99, I have been persuaded that the charge ought to clarify the purpose element of Count Two. Of particular concern is the risk that the jury will fail to see the distinction between the intent requirement of Counts Three, Four, and

3

Five, which require an intent to promote the success of the underlying offenses, and Counts One and Two, which do not require specific intent that the underlying offenses succeed. *See* Gov't Resp. 7. I disagree with Mr. Mohamed's contention that this addition would "constructively amend[] the Indictment." Mohamed Letter 1. To the contrary, section 2339A requires proof that a defendant knew or intended that material support or resources would be used in connection with, *inter alia*, hostage-taking or threatening a U.S. national with a weapon of mass destruction—but does not require the defendant to have had the specific intent to commit, aid, or encourage any particular act in violation of 18 U.S.C. § 2339A(a). *Schansman v. Sberbank of Russia PJSC*, 565 F. Supp. 3d 405, 416 (S.D.N.Y. 2021). I find the government's proposed language acceptable and will incorporate it into the instruction on Count Two.

Finally, I have decided against including an instruction on false exculpatory statements. At the charge conference, I indicated that I intended to add a false exculpatory statement instruction to the jury charge. Tr. 1672:5–7. However, I have reconsidered this decision in light of the reason I deferred a decision on the false exculpatory statement instruction in the first place. In my prior opinion, I stated that the allegedly false exculpatory statements made by the defendants in their post-arrest interviews were "vague statements or omissions" that "likely do not rise to the level of warranting a false exculpatory statement instruction." Jury Charge Op. 5. Because the trial record does not contain anything beyond the allegedly false exculpatory statements Mr. Hassan made at his post-arrest interview, I remain unconvinced that a false exculpatory statement instruction is required. The parties of course may present arguments about the allegedly false statements and ask the jury to draw inferences from them, but I will not highlight the statements with a targeted jury instruction.

## II. Scope of Expert Testimony

On February 19, 2023, the government filed a motion in limine seeking to preclude certain areas of Dr. Nancy Franklin's testimony. Gov't Mot. in Lim., ECF No. 254. The government argues that I should prevent Dr. Franklin from testifying on the following topics: (1) post-event suggestion; (2) non-blind identification procedures; (3) showup procedures; and (4) DNA exonerations. Mr. Hassan's response opposes the government's motion except as to the showup procedure testimony and additionally asks that Dr. Franklin be permitted to testify regarding event stress, weapons presence, and the presence of multiple perpetrators.[1] Hassan Mot. Resp., ECF No. 255.

I will allow Dr. Franklin to testify on the topic of post-event suggestion. The government insists that "there is no basis in the record" to support this testimony because neither Mr. Moore nor Special Agent Elisabeth Granberg testified to any impropriety or suggestiveness in Mr. Moore's 2019 identification of Mr. Hassan in the photo array. Gov't Mot. in Lim. 2–3. Though the record contains no direct evidence of post-event suggestion, Mr. Moore failed to identify Mr. Hassan in 2014 and then positively identified him in 2019. Moreover, Dr. Franklin's testimony will include that a witness's memory can be influenced "even without any deliberate attempt . . . and even without the witness's awareness." Franklin Aff. ¶ 24, ECF No. 90. The gap between the non-identification and the identification supports an inference that *something* happened between 2014 and 2019 to influence Mr. Moore's memory; Mr. Hassan suggests Mr. Moore was influenced

---

[1] I have previously ruled that event stress and weapons presence are "clearly relevant." Op. & Order 14, ECF No. 79. The presence of multiple perpetrators is also relevant. I will allow Dr. Franklin to testify on those topics notwithstanding defense counsel's last-minute reversal of its earlier decision "not to 'focus' on those areas." Hassan Mot. Resp. 2 n.3.

by information he found while writing his book. Hassan Mot. Resp. 2. There is sufficient basis in the record for testimony on post-event suggestion.

However, I will preclude Dr. Franklin's testimony about the potential contaminating effect of a non-blind photo array procedure. Though the record demonstrates that the Mr. Moore in fact participated in a non-blind photo-array procedure, nothing in Mr. Moore or Special Agent Granberg's testimony about the photo-array identification support an inference that the non-blind nature of the procedure influenced Mr. Moore's identification.

Finally, I will allow Dr. Franklin to refer to DNA exonerations as outlined in her affidavit.[2] The government argues that such testimony would be "inapposite," "unduly prejudicial," and would improperly opine on the ultimate issue of guilt or innocence. Gov't Mot. in Lim. 4. I disagree. DNA exonerations certainly relate to guilt or innocence, but Dr. Franklin refers to DNA exonerations only as evidence (from two different studies) supporting her testimony regarding factors that contribute to inaccurate identifications. Studies relying on DNA exoneration are thus part of the methodology Dr. Franklin used to arrive at her conclusions regarding stranger identification, Franklin Aff. ¶ 8, and witness confidence in an identification, *id.* ¶ 39, and I see no reason to reflexively prevent any testimony about the concept of a DNA exoneration because the subject references guilt or innocence in other cases.

### III. Rule 29 Motion

On February 17, 2023, Mr. Hassan moved for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure. Letter Mot., ECF No. 251. Viewing the evidence "in the light most favorable to the government [and] crediting every inference that could have been drawn

---

[2] Save for the refence in paragraph 28, which deals with non-blind procedures.

in the government's favor," *United States v. Pauling*, 924 F.3d 649, 656 (2d Cir. 2019), I conclude that the government has presented sufficient evidence from which a reasonable juror could find Mr. Hassan guilty beyond a reasonable doubt on the seven charges in the indictment. Mr. Hassan's motion is therefore denied.[3]

## CONCLUSION

For the foregoing reasons, I accept in part and reject in part the requested modifications to the jury charge; I grant in part and deny in part the government's motion in limine; and I deny Mr. Hassan's Rule 29 motion.

SO ORDERED.

                                                                                                                                   /s/_____
                                                                                                                            Allyne R. Ross
                                                                                                                            United States District Judge

Dated:         February 20, 2023
                 Brooklyn, New York

---

[3] For the same reason, I denied Mr. Mohamed's Rule 29 motion on the record at trial. Tr. 1604:6.