UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-against-

MOHAMED TAHLIL MOHAMED,
   also known as "Tahlil Mohamed,"
"Mohamed Tahlil," "Maxamed Tahliil
Guure," "the Taliye" and "Mohamed the
Taliye," and

ABDI YUSUF HASSAN,

                *Defendants*.

18-cr-603 (ARR)

NOT FOR ELECTRONIC
OR PRINT PUBLICATION

**OPINION & ORDER**

ROSS, United States District Judge:

Following a jury trial, defendants Mohamed Tahlil Mohamed and Abdi Yusuf Hassan were found guilty of conspiracy to provide material support for acts of terrorism, provision and attempted provision of material support for acts of terrorism, hostage-taking conspiracy, hostage taking, threatening a U.S. national with a weapon of mass destruction, unlawful use of firearms, and firearms conspiracy. Defendants have each filed renewed motions for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 and motions for a new trial pursuant to Federal Rule of Criminal Procedure 33. For the following reasons, the motions are denied.

## BACKGROUND

Mr. Mohamed and Mr. Hassan were tried and convicted for their roles in the hostage taking of American journalist Michael Scott Moore. Mr. Moore was taken hostage in Somalia, held captive for two years and eight months, and released following payment of a ransom. At trial, the government presented evidence that Mr. Mohamed and Mr. Hassan were members of the conspiracy that captured and ransomed Mr. Moore. The evidence established that the men had

distinct roles in the conspiracy: Mr. Mohamed held a leadership position in the guard force and used his military expertise to transport, conceal, and guard Mr. Moore. Mr. Hassan, after becoming a government minister, assumed responsibility for negotiating the release of Mr. Moore for a significant ransom.

The three-week jury trial featured testimony from, among others, Mr. Moore and two confidential informants who were in Somalia during Mr. Moore's captivity: Mohamed Ibrahim Khaire and Roble Abdul Tahlil. I assume the parties' familiarity with the proceedings and evidence presented at trial.

Prior to the close of evidence, defendants submitted Rule 29 motions for acquittal of any offense for which the evidence was insufficient to sustain a conviction. Mohamed Rule 29 Mot., ECF No. 248; Hassan Rule 29 Mot., ECF No. 251. I denied both motions. Trial Tr. 1604:6 ("Tr.") (Mohamed motion); Op. & Order, ECF No. 256 (Hassan motion). I denied the motions again when they were renewed after the close of evidence. Tr. 1781:2–13. Following its deliberations, the jury returned a verdict of guilty on all counts as to both defendants. Jury Verdict, ECF No. 263. Defendants then filed the present motions renewing their Rule 29 challenges and asking for a new trial pursuant to Rule 33. Hassan Post-Trial Mot., ECF No. 285; Mohamed Post-Trial Mot., ECF No. 286.

## STANDARD OF REVIEW

*Rule 29*

Under Rule 29, "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). In deciding a Rule 29 motion, I must consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements

of the crime beyond a reasonable doubt." *United States v. Espaillet*, 380 F.3d 713, 718 (2d Cir. 2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "[T]he court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is 'nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt.'" *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999) (quoting *United States v. White*, 673 F.2d 299, 301 (10th Cir. 1982)).

In order to "avoid usurping the role of the jury," I may not, when considering a Rule 29 motion, "substitute [my] own determinations of credibility or relative weight of the evidence for that of the jury," *United States v. Autori*, 212 F.3d 105, 114 (2d Cir. 2000) (quotation omitted), and must credit "every inference that the jury might have drawn in favor of the government," *United States v. Temple*, 447 F.3d 130, 136–37 (2d Cir. 2006) (quotation omitted). Accordingly, a defendant seeking a judgment of acquittal on the ground that the evidence was insufficient bears a "heavy burden." *United States v. Irving*, 452 F.3d 110, 117 (2d Cir. 2006).

**Rule 33**

Rule 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001). Although I have broader discretion to grant a Rule 33 than a Rule 29 motion, the Second Circuit has cautioned that this authority must be exercised "sparingly and in the most extraordinary circumstances." *Id.* (quotation omitted).

When considering a Rule 33 motion, I am "entitled to 'weigh the evidence and in so doing evaluate . . . the credibility of the witnesses.'" *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992) (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)). However, "it

3

long has been [the Second Circuit's] rule that trial courts must defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses." *Sanchez*, 969 F.2d at 1414 (quotation omitted). Only in "exceptional circumstances," where the testimony is "patently incredible or defies physical realities," may the court "intrude upon the jury function of credibility assessment." *Id.*; *see also Ferguson*, 246 F.3d at 133–34. "Manifest injustice cannot be found simply on the basis of the trial judge's determination that certain testimony is untruthful . . . ." *Sanchez*, 969 F.2d at 1414. Rather, when examining the totality of the evidence, "[t]here must be a real concern that an innocent person may have been convicted." *Ferguson*, 246 F.3d at 134 (quotation omitted).

## DISCUSSION

### I. The Rule 29 Motions Are Denied.

In his post-trial motion for a judgment of acquittal under Rule 29, Mr. Mohamed argues that the government presented insufficient evidence that he possessed the necessary *mens* rea to be convicted of the charged offenses. Mohamed Post-Trial Mot. 5. Mr. Mohamed made the same argument in his initial Rule 29 motion, Mohamed Rule 29 Mot. 5, and the present motion does not explain why I should reconsider my earlier ruling. Indeed, Mr. Mohamed's conclusory argument fails to specifically address any of the evidence or testimony presented at trial that implicated him in the hostage-taking scheme. *See* Gov't Opp'n to Defs.' Post-Trial Mots. ("Gov't Opp'n") 25–26, ECF No. 288 (summarizing relevant testimony and evidence). I thus see no reason to revisit my earlier finding that the evidence viewed in the light most favorable to the prosecution supports the conclusion that Mr. Mohamed was a knowing and willful participant in the Michael Scott Moore hostage-taking conspiracy and that he therefore possessed the necessary *mens rea* to be convicted of the charged offenses. Mr. Mohamed's Rule 29 motion is denied.

Mr. Hassan's post-trial motion cites the Rule 29 standard but does not explicitly argue that a judgment of acquittal is warranted based on sufficiency of the evidence. Even if Mr. Hassan intended to renew his Rule 29 motion, he provides no new reason why I should alter my earlier ruling. As a result, to the extent Mr. Hassan raises a renewed Rule 29 challenge, that motion is denied.

## II. The Rule 33 Motions Are Denied.

In their Rule 33 motions, defendants argue that they are entitled to a new trial based on an erroneous evidentiary ruling. Mr. Hassan also argues for a new trial because the court admitted only portions of his post-arrest statement, denied his motion for a *Franks* hearing, and instructed the jury on the *Pinkerton* theory of liability, and Mr. Mohamed argues for a new trial based on the weight of the evidence. I address each argument in turn, albeit briefly, as nearly all the issues have been addressed in prior rulings.

Both defendants contend they were denied a fair trial when I rejected their efforts to introduce as evidence notes made by AUSA Denton during an interview with government witness Mohamed Ibrahim Khaire. Though defendants were able to cross-examine Khaire regarding the notes, I did not allow the introduction of the notes as prior inconsistent statements under Federal Rule of Evidence 613.

Rule 613 allows, in certain circumstances, the admission of extrinsic evidence of a witness's prior inconsistent statement. However, as previously explained, binding circuit precedent states that "a third party's characterization of a witness's statement does not constitute a prior statement of that witness unless the witness has subscribed to that characterization." *United States v. Mohamed*, No. 18-CR-603 (ARR), 2023 WL 2033806, at *1 (E.D.N.Y. Feb. 16, 2023) (quoting *United States v. Almonte*, 956 F.2d 27, 29 (2d Cir. 1992)). Defendants acknowledge the

prevailing law but argue that the notes taken by AUSA Denton were not a third-party characterization and that they are entitled to an evidentiary hearing to prove it. However, I see no use in having an evidentiary hearing because I remain convinced that the notes were "an interpretation of comments made by the witness" rather than "the witness'[s] own statement[s]." Mohamed Post-Trial Mot. 10. First, the interview at which the notes were produced was conducted through an interpreter. Second, the notes were written in shorthand and condensed a lengthy interview into summary bullet points. Third, "at least one of the recorded statements at issue appears to conflate two different issues Mr. Khaire testified about at trial." *Mohamed*, 2023 WL 2033806, at *2. Thus, I fail to see how defendants would be able to prove in an evidentiary hearing that the notes were a verbatim transcript of the statements Khaire made in the interview.

Mr. Hassan next argues that I erred in denying his motion to introduce hearsay statements contained in several FBI reports suggesting that Khaire served as a guard in the Moore hostage-taking conspiracy. At trial, I gave Hassan the opportunity to demonstrate that the reports were admissible under the residual exception of Federal Rule of Evidence 807. I ultimately denied the motion having determined that Mr. Hassan failed to show that the statements he sought to admit were supported by sufficient indicia of reliability. Tr. 1550:5–22 (explaining that "the subsource who said Khaire was a guard was later ejected from the [FBI] program for lacking credibility[,] . . . Mr. Moore failed to identify a photograph of Mr. Khaire[,] and . . . certain statements made by the subsource [were] inaccurate"). Mr. Hassan may disagree with my prior ruling, but he fails to provide any non-conclusory argument that the ruling was incorrect. *See* Hassan Post-Trial Mot. 5.

Next, Mr. Hassan argues that I erred in admitting only portions of his post-arrest statement. As I explained in my ruling on the parties' motions in limine, the entire post-arrest statement was "not admissible under the rule of completeness" because "[a] general appeal to tenor and context

6

is not sufficient to meet the narrow rule of completeness exception." *United States v. Mohamed*, No. 18-CR-603 (ARR), 2022 WL 15493545, at *5 (E.D.N.Y. Oct. 26, 2022). And the specific excerpts Mr. Hassan identified were likewise inadmissible because none of them clarified or explained the excerpts introduced by the government. *See id.* at *7.

Mr. Hassan also argues that I erred in denying his motion for a *Franks* hearing to suppress the entirety of his post-arrest statement. Under *Franks v. Delaware*, 438 U.S. 154 (1978), a defendant is entitled to a hearing to challenge the veracity of a warrant affidavit upon a "substantial preliminary showing" that "(1) the warrant application contains a false statement, (2) the false statement was included intentionally or recklessly, and (3) the false statement was necessary to the finding of probable cause." *United States v. McKenzie*, 13 F.4th 223, 236 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 2766 (2022) (quoting *Franks*, 438 U.S. at 155–56). Mr. Hassan insists that a *Franks* hearing was required because the warrant application for his arrest relied on the statement that Mr. Moore identified Hassan in a photo array—a statement purportedly contradicted by Mr. Moore's testimony at trial.

Assuming *Franks* applies in the context of an arrest warrant, *see United States v. Awadallah*, 349 F.3d 42, 64 n.17 (2d Cir. 2003), I conclude (as I did when this issue arose at trial), that Mr. Hassan failed to make the requisite substantial preliminary showing. The complaint sworn to by an FBI Special Agent in support of the warrant application stated: "Victim-1 has reviewed a photo lineup of six individuals, and identified a photograph of the defendant ABDI YUSUF HASSAN ('HASSAN'), as an individual whom Victim-1 had previously described to the FBI as 'Hassan' . . . ." Gov't Opp'n 42. Mr. Hassan argues that Mr. Moore's trial testimony contradicts this statement. At trial, Mr. Moore testified that, upon reviewing the photo lineup, "I told them that no one looked familiar except number three" who "could have been the man I remember as Hassan,

7

but he looked heavier." Tr. 489:1–5; *see also id.* at 574:14–16 ("I told him no one looked familiar, but No. 3 had some resemblance to Has[s]an. But it looked like he'd put on weight.")

To be sure, Mr. Moore's account of the identification was more qualified than the FBI Agent's account of Moore's reaction to the lineup. *See, e.g.*, Tr. 1129:17–22 ("I recall seeing his eyes like literally going across to each photo and then they stopped at photo number three; and within a second, he immediately said photo number three and he identified him as Hassan and said this person was, this person was involved in my kidnapping, I recall him being there.") However, the crux of the issue is whether Moore's testimony supports a substantial preliminary showing that he did not identify Hassan in the photo array. Ultimately, I stand by my earlier conclusion that Mr. Moore testified to making a positive, albeit not 100% certain, identification. *See* Tr. 661:9–16, 1118:3–9; *see also id.* at 491:18–20 ("Q: How many years after your release did you identify this photo as Hassan? A: Five Years."). Mr. Moore's testimony is consistent with the affidavit's characterization that he identified Mr. Hassan in the photo array, and certainly does not make a substantial preliminary showing that a false statement was "intentionally or recklessly" included in the warrant affidavit. Mr. Hassan has not shown that the *Franks* ruling was error.[1]

Mr. Hassan's last argument is that he is entitled to a new trial due to the *Pinkerton* jury instruction. As I explained in a prior ruling, a charge on the *Pinkerton* theory of liability was entirely appropriate in this case. Op. & Order 3, ECF No. 184. The government presented ample evidence establishing the existence of a conspiracy and the commission of substantive offenses in connection with that conspiracy. There was thus no risk of a reverse-*Pinkerton* analysis, nor was there risk of juror confusion, since the jury only had to decide, in connection with the *Pinkerton*

---

[1] Mr. Hassan also makes a passing reference to the denial of a motion for a *Wade* hearing but does not appear to contend that that ruling provides grounds for a new trial under Rule 33. *See* Hassan Post-Trial Mot. at 5 & n.4.

charge, two of the principal issues in the case: "whether defendants were members of the conspiracy at the time the substantive crime was committed and whether defendants could have reasonably foreseen that the substantive crime might be committed by their coconspirators." *Id.* at 4. Mr. Hassan may disagree with this decision, but he does not explain how or why it was incorrect. *See* Hassan Post-Trial Mot. 6.

Finally, I address Mr. Mohamed's Rule 33 argument based on weight of the evidence. *See* Mohamed Post-Trial Mot. 8–9. Mohamed insists that Khaire's testimony lacked credibility and that a verdict based on his testimony "constitutes a 'manifest injustice.'" *Id.* at 9. But the cases Mr. Mohamed marshals in support demonstrate why his argument fails to persuade. In *United States v. Autuori*, the Second Circuit affirmed the discretionary grant of a new trial where "the credibility of the principal witnesses was weak and . . . the soundness of the verdict [was] highly doubtful." 212 F.3d at 121. And in *United States v. Robinson*, the court affirmed a new trial grant where the credibility of the government's identification witness was "seriously impeached" and there was a "paucity of other evidence implicating [the defendant] in the shooting." 430 F.3d 537, 543 (2d Cir. 2005). In this case, there is no indication that the jury's verdict was based on Khaire's testimony, nor that the jury necessarily even found Khaire to be a credible witness. The government presented exhaustive and credible testimony from multiple other witnesses, including Mr. Moore and the other confidential informant, as well as evidence of admissions Mr. Mohamed made in his communications with Mr. Moore. Khaire's testimony may have lacked credibility, but the rest of the evidence weighs heavily in the government's favor, so I will not disturb the jury's verdict by granting a new trial.

## CONCLUSION

For the foregoing reasons, defendants' motions are denied.

SO ORDERED.

					/s/
					Allyne R. Ross
					United States District Judge

Dated:		June 12, 2023
		Brooklyn, New York